# IN THE COURT OF APPEALS OF IOWA

No. 15-0768
Filed July 9, 2015

**IN THE INTEREST OF A.F., L.M.F., D.M.F., AND Y.F.,**
**Minor Children,**

**N.F.K., Mother,**
**Appellant.**

_____

Appeal from the Iowa District Court for Johnson County, Sylvia A. Lewis,

Judge.


A mother appeals the termination of her parental rights.  **AFFIRMED.**


Jean Lawrence and John B. Whiston of the Clinical Law Program,

University of Iowa College of Law, Iowa City, for appellant mother.

Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd, Assistant

Attorney General, Janet M. Lyness, County Attorney, and Patricia Weir, Assistant

County Attorney, for appellee State.

Anthony Haughton of Linn County Advocate, attorney and guardian ad

litem for minor children.


Considered by Tabor, P.J., McDonald, J., and Goodhue, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2015).

**GOODHUE, S.J.**

A mother appeals the termination of her parental rights to her children. She contends termination is not in the children's best interests. She also contends termination is not required because the children are in the care of a relative.

## I. BACKGROUND FACTS AND PROCEEDINGS.

There are four children at issue in the present case. The children were all born of the same mother, a citizen of Honduras who entered the United States illegally. Each child has a different father. The parental rights of three of the fathers were also terminated, though the termination of their parental rights is not at issue in this appeal.

The family first came to the attention of the Department of Human Services (DHS) in April 2009, when the mother had only two children, A.F. and L.M.F. At the time, A.F. was four years old and suffered serious physical injuries inflicted by L.M.F.'s father. As a result, both A.F. and L.M.F. were removed and adjudicated to be children in need of assistance (CINA). L.M.F.'s father was convicted of domestic abuse assault for abusing the mother and was eventually deported to Honduras. The children were returned to the mother's care in May 2010, and the CINA proceedings were terminated in November 2010.

Two additional claims of abuse were made following the close of the initial CINA proceedings. In April of 2012, A.F. reported that L.M.F.'s father had sexually abused her. After an investigation, the report was determined to be unfounded. In June of 2012, a confirmed finding of physical abuse was made against the mother after it was reported her paramour had left bruises on L.M.F.

During the summer of 2013, the mother was investigated for selling methamphetamine. The children were present with her during one transaction with an undercover agent. In September 2013, law enforcement officers at the mother's home discovered L.M.F., then four years old, tied up in a bedroom closet with visible marks and bruises up his arm, as well as his chest and back. The mother admitted she instructed her live-in boyfriend to tie L.M.F. up as a consequence for inappropriate behaviors. Approximately 1000 grams of methamphetamine was also found in the home, some of it within the children's reach.

A.F, L.M.F., and D.M.F. were removed from the mother's care and adjudicated CINA pursuant to Iowa Code sections 232.2(6)(b), (c)(2), and (p) (2013). At the time, the mother was pregnant with Y.F. After birth, Y.F. was also removed from the mother's care and adjudicated CINA pursuant to sections 232.2(6)(b), (n), and (p).

The mother has been incarcerated since September 2013, and pled guilty to conspiracy to distribute methamphetamine. She is not expected to be released from federal prison until 2020. Because she is not a United States citizen, she faces possible deportation upon her release.

The State filed a petition seeking to terminate the mother's parental rights pursuant to Iowa Code sections 232.116(1)(b), (d), (f), and (j). Following a hearing, the juvenile court entered its order terminating the mother's parental rights pursuant to sections 232.116(1)(f) and (j). The mother appeals.

## II. SCOPE AND STANDARD OF REVIEW.

We review termination proceedings de novo. *In re J.C.*, 857 N.W.2d 495, 500 (Iowa 2014). In so doing, we review both the facts and the law to adjudicate rights anew. *Id.* While we give weight to the juvenile court's fact findings— especially where witness credibility is concerned—we are not bound by them. *In re B.C.*, 845 N.W.2d 77, 79 (Iowa Ct. App. 2014). Our overriding concern is the children's best interests. *J.C.*, 857 N.W.2d at 500.

## III. TERMINATION OF THE MOTHER'S PARENTAL RIGHTS.

Before terminating parental rights, the court must engage in a three-step analysis. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). First, the court must determine if the State has proved one of the grounds for termination set forth in Iowa Code section 232.116(1). *Id.* If that ground has been established, the second step is to determine whether termination of parental rights would be in the children's best interests as set forth in section 232.116(2). *Id.* at 706-07. If the court determines that termination is in the children's best interests, the final step is consider whether any of the statutory exceptions outlined in section 232.116(3) should preclude termination. *Id.* at 707.

The mother does not dispute the State proved the grounds for termination set forth in sections 232.116(1)(f) and (j). She instead challenges the termination at the second and third steps of the analysis, arguing termination is not in the children's best interests and her parental rights to D.M.F. should not be terminated because that child is in the father's custody as set forth in section 232.116(3)(a). Because she concedes the first step of the analysis, we focus on the second and third. *See P.L.*, 778 N.W.2d at 40.

**A. Best Interests.**

The mother gives five arguments as to why termination is against the children's best interests. She notes the strong bond between the children and the unlikelihood they will end up in the same adoptive home. She further notes L.M.F.'s serious behavioral issues and mental health diagnoses make it difficult to place him in another home. The mother also argues the two older children were raised in the Hispanic culture and there are few Hispanic adoptive homes available to preserve their culture. Finally, she notes D.M.F. has already achieved permanency and argues there is no showing ongoing contact with her would be detrimental to the child.

In deciding whether to terminate parental rights, we must "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). In considering the children's best interests, we may consider "[w]hether the parent's ability to provide the needs of the child is affected by . . . the parent's imprisonment for a felony." *Id.* § 232.116(2)(a).

The mother is currently incarcerated on federal drug charges and is not expected to be released until 2020. At that time, the three oldest children will have been out of her care for approximately seven years and the youngest child will never have been in the mother's care. A.F., who will be fifteen years of age at that time, will have had the most experience in the mother's care—approximately half of her life. During that time she suffered severe physical abuse, witnessed domestic violence, and witnessed the physical abuse of L.M.F.

As a result of that abuse, L.M.F. has serious behavioral issues and mental health diagnoses. D.M.F., who was not yet two years old at the time the mother was arrested, will have little memory of the mother. Upon the mother's release, her deportation is likely. Even if she was not deported, the mother would require additional time to prove she has resolved her substance abuse issues, to show she can ensure the children's safety, and to develop bonds with the children. This is time the children simply do not have.

The mother's arguments against termination are not compelling. Although there is a parental interest in the integrity of the family, that interest is not absolute. *In re E.B.L.*, 501 N.W.2d 547, 551 (Iowa 1993). Once the statutory grounds for termination have been found to exist, termination of parental rights— rather than a permanency order—is the legally preferred alternative. *See In re L.M.F.*, 490 N.W.2d 66, 67–68 (Iowa Ct. App. 1992); *see also In re T.C.*, 522 N.W.2d 106, 108 (Iowa Ct. App. 1994) (noting that a case must be viewed with "a sense of urgency" once the time limits set forth in the statute have passed). Nor is "[a]n appropriate determination to terminate a parent-child relationship . . . countermanded by the ability and willingness of a family relative to take the child." *In re C.K.*, 558 N.W.2d 170, 174 (Iowa 1997). Child custody should be quickly fixed and little disturbed. *In re A.C.*, 415 N.W.2d 609, 613 (Iowa 1987).

Considering the mother's incarceration, her parenting deficiencies, her past involvement in serious criminal activity, and the obstacles facing the mother before she could be reunited with the children, we find termination is in the children's best interests.

**B. Relative Placement.**

The mother next contends her parental rights to D.M.F. should not be terminated because D.M.F. has been in the care of the father since removal from the home in September 2013. Iowa Code section 232.116(3)(a) states "[t]he court need not terminate the relationship between the parent and child if the court finds [a] relative has legal custody of the child."

Application of section 232.116(3) is permissive, not mandatory. *In re J.L.W.*, 570 N.W.2d 778, 781 (Iowa Ct. App. 1997). The court has discretion, based on the unique circumstances of each case and the best interests of the child, whether to apply the factors in this section to save the parent-child relationship. *In re C.L.H.*, 500 N.W.2d 449, 454 (Iowa Ct. App. 1993), *overruled on other grounds by P.L.*, 778 N.W.2d at 39–40. Given the grounds for termination have been proved and termination is in the child's best interests, we decline to apply section 232.116(3)(a) to preclude termination. *See J.C.*, 857 N.W.2d at 502 (noting the court's obligation to move urgently to achieve the ends that will serve the child's best interests).

**AFFIRMED.**