**In the Interest of E.B.L. and H.B.L., Minor Children,**

**M.L., Mother, Appellant,**

**State of Iowa, Appellee.**

**No. 92–1372.**

Supreme Court of Iowa.

June 16, 1993.

Rehearing Denied July 30, 1993.

Kay E. Dull, Sioux City, for appellant.

Debra Y. Lulf, Sioux City, guardian ad litem for minor children.

Bonnie J. Campbell, Atty. Gen., John M. Parmeter, Sp. Asst. Atty. Gen., and Kathrine S. Miller-Todd, Asst. Atty. Gen., for appellee.

Considered by McGIVERIN, C.J., and LAVORATO, NEUMAN, SNELL, and ANDREASEN, JJ.

ANDREASEN, Justice.

The mother appealed an order of an associate juvenile judge terminating her parental rights as to two of her children. The court of appeals reversed and remanded. We granted further review. Having reviewed the record, we vacate the decision of the court of appeals and affirm the termination order.

## I. *Background.*

M.L. is the natural mother of seven children: M.L. (born September 19, 1980), T.L. (born March 16, 1982), E.B.L. (born March 18, 1983), H.B.L. (born October 28, 1984), P.L. (born April 30, 1986), A.L. (born October 12, 1987), and Z.L. (born March 15, 1989). O.L. is the natural father of the six oldest children.

In February 1988, after allegations that the father had been sexually abusing his oldest daughter, M.L., the State filed a child in need of assistance (CINA) petition. The father was charged with criminal sexual abuse. On April 1, the juvenile court found the children to be CINA. The court ordered the father to have no contact with the children. Pending a dispositional hearing, the court gave the mother temporary custody of the children. The court ordered the mother to have no telephone communications with O.L. On April 5, the department of human services (DHS) learned that the father and mother had left Iowa with their children. The DHS then issued a nationwide protective service alert. Later, the father was found in Chicago. The mother and children were located in New York after they applied for shelter services. The mother was charged with child endangerment. The father and mother

were extradited to Woodbury County and the court ordered the children be placed in foster care upon their return to Iowa.

In February 1989, the father pleaded guilty to two counts of indecent exposure. The court sentenced him to two consecutive two-year terms of imprisonment.

On March 15, 1989, Z.L. was born while the mother resided with D.S.; the natural father of Z.L. After he assaulted the mother, she obtained a restraining order against him. Thereafter, Z.L. was adjudicated CINA and placed in his mother's care, subject to protective supervision by the DHS. Later, the court terminated D.S.'s parental rights.

On May 24, 1990, the State filed a petition for termination of parental rights as to the six oldest children. Their father voluntarily agreed to and the court ordered termination of his parental rights. The mother consented to termination of her parental rights as to P.L. and A.L. and in July 1990, the court ordered termination. The court ordered the two oldest children, M.L. and T.L., be returned to their mother's care and ordered H.B.L. and E.B.L. to continue in foster care.

■ On April 24, 1992, the State filed a petition for termination of the mother's parental rights as to E.B.L. and H.B.L. Following a three-day hearing, the juvenile court terminated, on August 5, 1992, the mother's parental rights as to E.B.L. and H.B.L. The mother appealed.[1] The court of appeals reversed and remanded. The court of appeals determined the State had not established by clear and convincing evidence the elements of Iowa Code sections 232.116(1)(e) and (f) (1991). The State was granted further review.

## II. *Standard of Review.*

■ Appellate review of proceedings to terminate a parent-child relationship are de novo. *In re Dameron*, 306 N.W.2d 743, 745 (Iowa 1981). We review the facts as well as the law and adjudicate the parents'

rights anew. *Id.* We give weight to the fact findings of the juvenile court, who is able to observe the witnesses, but we are not bound by them. *In re S.O.*, 483 N.W.2d 602, 603 (Iowa 1992); Iowa R.App.P. 14(f)(7). Our statutory termination provisions are preventive as well as remedial. They are designed to prevent probable harm to a child. *In re J.S.*, 427 N.W.2d 162, 163 (Iowa 1988). Our first and governing consideration in termination proceedings is the best interests of the child. Iowa R.App.P. 14(f)(15).

## III. *Termination of Parental Rights.*

The State sought termination of the mother's parental rights pursuant to Iowa Code sections 232.116(1)(e) and (f). Iowa Code section 232.116(1)(e) permits the court to terminate the parent-child relationship if the court finds all of the following have occurred:

(1) The child is four years of age or older.

(2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.

(3) The custody of the child has been transferred from the child's parents for placement pursuant to section 232.102 for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.

(4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

Iowa Code § 232.116(1)(f) permits the court to terminate the parent-child relationship if the court finds all of the following have occurred:

(1) The child has been adjudicated a child in need of assistance pursuant to section 232.96.

(2) The court has terminated parental rights pursuant to section 232.117 with

---

1. Parties to a termination of parental rights proceedings heard by an associate juvenile judge are entitled to appeal, in the manner of an appeal from orders, findings or decisions of district associate judges. Iowa Code § 602.7103(3) (1991) as amended 1992 Acts ch. 1124, § 4. The juvenile court is within the district court. Iowa Code § 602.7101.

respect to another child who is a member of the same family.

(3) There is clear and convincing evidence that the parent continues to lack the ability or willingness to respond to services which would correct the situation.

(4) There is clear and convincing evidence that an additional period of rehabilitation would not correct the situation.

All parties agree that the requirements of (e)(1), (2) and (3) and (f)(1) and (2) of subsection 232.116(1) have been satisfied. The issues on appeal therefore relate only to (e)(4), (f)(3) and (4) of subsection 232.-116(1).

## IV. *CINA.*

■ Section 232.116(1)(e)(4) requires proof that the child cannot be returned to the parent because the child remains a "child in need of assistance" as defined in section 232.2(6). *See In re M.W.,* 458 N.W.2d 847, 850 (Iowa 1990); *In re J.L.P.,* 449 N.W.2d 349, 351 (Iowa 1989); *In re K.F.,* 437 N.W.2d 559, 562 (Iowa 1989). The juvenile court relied on four alternative definitions in its findings. Upon our de novo review of the record, we find clear and convincing evidence E.B.L. and H.B.L. would remain CINA if returned to the custody of their mother.

It is likely E.B.L. and H.B.L. would be neglected if returned to their mother's custody. *See* Iowa Code § 232.2(6)(b). Both have been emotionally and physically harmed through the actions of their father and inaction of their mother and are fearful they will again be harmed. During supervised visits there was little interaction between E.B.L. and H.B.L. and their mother. E.B.L. is made the scapegoat by his mother and she attempts to turn the other children against him. *See In re J.W.D.,* 456 N.W.2d 214, 217 (Iowa 1990) (every child deserves a safe, healthy and stimulating environment in which to grow and mature).

Both children need treatment for mental and emotional problems that their mother is unable to provide. *See* Iowa Code § 232.2(6)(n); *see also* Iowa Code § 232.-2(35) (definition of mental injury). E.B.L.

was both sexually and physically abused by his father while in the presence of his mother. He has considerable emotional problems related to the past abuse. Prior to and after visits with his mother he has experienced stomachaches, headaches, nightmares, regressive behaviors, and disassociative behaviors. He has drawn a picture of himself killing his father and has verbalized thoughts of killing his mother. He attends special education classes with his greatest deficits in language and reading. He also has considerable attention and concentration problems. At times he is immature. H.B.L. exhibits the symptoms of a child who has been sexually abused. Following visits with her mother she becomes hyperactive and "clingy." She also has deficits in language and reading for which she receives special assistance at school. She has emotional needs related to her past abuse. She may be even more at risk than E.B.L., because she is hiding it and closing it in and not dealing with her problems. She has escaped, temporarily, to a fantasy world where she is a princess and she can make everything all right.

Due to the mother's mental capacity and condition, placement of E.B.L. and H.B.L. with her would likely result in the children not receiving adequate care. *See* Iowa Code § 232.2(6)(n). She is a person who needs very concrete direction; she struggles with less tangible and emotional items. She comes from a very dysfunctional family and has been diagnosed as suffering from posttraumatic stress related to the physical, emotional and sexual abuse she suffered as a child and later as an adult. Due to her special needs she is not gainfully employed and her sources of income are limited to ADC and social security disability. She tends to isolate herself and her children from the community due to difficulties in social interaction. When her oldest two daughters were returned to her custody, she experienced problems due to the oldest's propensity to "parent" the family. She has, however, overcome the problems and has been able to care for her two oldest children, who requested to be reunited with their mother, and her youngest

child. *See In re A.M.S.*, 419 N.W.2d 723, 734 (Iowa 1988). Unfortunately, this does not mean she could also handle E.B.L. and H.B.L. *See In re I.L.G.R.*, 433 N.W.2d 681, 691 (Iowa 1988). Under these conditions, returning E.B.L. and H.B.L., special needs children who do not want to live with their mother, could jeopardize not only them, but also the three children already in the home.

### V. *Parent's Ability.*

■ Section 232.116(1)(f)(3) requires proof that "the parent continues to lack the ability ... to respond to services which would correct the situation." Upon our review of the record, we find clear and convincing evidence the mother cannot care for E.B.L. and H.B.L., even with the aid of services.

A myriad of intensive services have been offered to the mother over the past four years in an attempt to reunite E.B.L. and H.B.L. with her. These services have included protective day care, homemaker services, the Parent Survival Program, volunteer transportation, psychological evaluations, individual therapy, play therapy, in-home services, and foster care. After an erratic start, the mother has availed herself of the services offered by the State. They have, however, not given her the ability to care for E.B.L. and H.B.L. *See In re J.L.P.*, 449 N.W.2d at 353. She has admitted this with respect to E.B.L.

■ While mental disability, standing alone, is not sufficient reason for termination of the parent-child relationship, it can be a contributing factor to the inability to perform essential parental duties. *In re K.F.*, 437 N.W.2d at 560; *see* Iowa Code § 232.2(6)(n). Termination is appropriate when the parent lacks the capacity to meet the child's present needs as well as the capacity to adapt to the child's future needs. *In re A.M.S.*, 419 N.W.2d at 733–34. Both E.B.L. and H.B.L. have special needs which require extraordinary parenting skills which their mother simply does not possess due to her own special needs and circumstances. *See In re J.W.D.*, 456

N.W.2d at 218 (parent ill equipped to provide special care child needs).

### VI. *Time for Rehabilitation.*

■ Section 232.116(1)(f)(4) requires proof that "an additional period of rehabilitation would not correct the situation." Upon our de novo review of the record, we find clear and convincing evidence that additional rehabilitation will not allow E.B.L. and H.B.L. to be returned to the custody of their mother.

The legislature has determined the time period for rehabilitation of the parent. Iowa Code § 232.104. "The period must be reasonably limited because patience on behalf of the parent can quickly translate into intolerable hardship for the children." *In re R.J.*, 436 N.W.2d 630, 636 (Iowa 1989). "The crucial days of childhood cannot be suspended while parents experiment with ways to face up to their own problems." *In re A.C.*, 415 N.W.2d 609, 613 (Iowa 1987). We have been emphatic that after the statutory limit of twelve months, the case must be reviewed with a sense of urgency. *In re L.L.*, 459 N.W.2d 489, 495 (Iowa 1990).

■ While there is a parental interest in the integrity of the family unit, the parental interest is not absolute. *In re I.L.G.R.*, 433 N.W.2d at 689. We cannot preserve in law this relationship which no longer exists in fact, with E.B.L. and H.B.L. committed indefinitely to the parentless limbo of foster care. *See In re D.J.R.*, 454 N.W.2d 838, 845 (Iowa 1990).

E.B.L. and H.B.L. were removed from their mother's custody in 1988. Efforts at reunification have continued unsuccessfully for four years. These children do not wish to visit their mother, let alone live with her. More time in foster care awaiting the possibility of unwanted reunification, however unlikely, is not in the best interests of these children. Clearly, E.B.L.'s and H.B.L.'s most pressing needs at this juncture are permanency, emotional stability and to attach as part of a family, not additional rehabilitation. *See* Iowa Code § 232.104.

### VII. *Other Considerations.*

 Since we have found the grounds for termination exist, we will now consider the factors enumerated in Iowa Code section 232.116(2). These factors, standing alone, are not grounds for termination. *See In re T.O.*, 470 N.W.2d 8, 11 (Iowa 1991); *In re J.R.*, 478 N.W.2d 409, 414 (Iowa App.1991) (citing *In re A.C.*, 415 N.W.2d 609 (Iowa 1987)). Upon our review, we find the criteria set forth in section 232.116(2) weigh in favor of termination.

As we have previously stated, the mother's mental capacity affects her ability to care for E.B.L. and H.B.L. Both children have special needs that her mental ability renders her unable to meet. *See* Iowa Code § 232.116(2)(a).

E.B.L. and H.B.L. are integrated into their current foster family. *See In re J.R.*, 478 N.W.2d at 413–14. Their familial identity is not with their mother and other siblings with whom they have little or no bonding, but with their current foster family. *See* Iowa Code § 232.116(2)(b). They trust their current foster parents. E.B.L. and H.B.L. have a very strong bond developed over the years while they were each other's only family. The foster parents are ready, willing and able to meet the special needs of E.B.L. and H.B.L. *Id.; see also* Iowa Code § 232.116(2)(c). They have exhibited a good understanding of the children's special needs. E.B.L. and H.B.L. had lived with their current foster parents for approximately twenty months at the time of the hearing terminating their mother's parental rights. *See* Iowa Code § 232.116(2)(b)(1). The foster parents have addressed the children's educational needs by reading to them at home and giving them special assistance. They have provided them a safe, stable and nurturing environment. The children have made considerable progress since their placement in this foster home in November 1990. This environment has proven beneficial to both children and it would be undesirable to remove the children from their current foster family. *Id.*

E.B.L. and H.B.L. very much want to be adopted by their foster parents and "live with them forever." *See* Iowa Code § 232.116(2)(b)(2). The associate juvenile judge commented on the childrens' strong preference, stating that "over the last seven years ... on the juvenile court bench [he] cannot recall ever meeting with two children who have been so consistent and certain about where they want to live."

The foster parents testified as to the extraordinary parenting skills required in dealing with E.B.L. and H.B.L. *See* Iowa Code § 232.116(2)(c). Even they, with their special training as foster parents, were greatly frustrated at times. Such a task would be next to impossible for a single person with three other children, especially one who has limited mental capabilities. The foster parents are interested in adopting E.B.L. and H.B.L.

All of these factors suggest that it would be in the best interests of E.B.L. and H.B.L. to terminate their mother's parental rights as to them. The child care professionals who have worked with these children have also recommended termination. Particularly important is the guardian ad litem who "regrettably" recommended terminating the mother's parental rights. She acknowledges the mother is a very well liked person who has grown as a parent and should be proud of the progress she has made. The mother, DHS, and the foster parents wanted reunification of E.B.L. and H.B.L. with their mother; but it did not happen.

We recognize a family relationship has been reestablished between the two oldest daughters and their mother. M.L. and T.L. wanted desperately to return to their mother, and they were willing to work very hard to do whatever it would take to make their return home successful. The whole family has worked very hard together to make it. E.B.L. and H.B.L. are just the opposite. Reasonable efforts to reunify them with the rest of the family have been unsuccessful. Unfortunately, E.B.L. and H.B.L. did not bond with their mother. Although they were young, they were old enough to remember their mother's inability to protect

them or herself from abuse by their father. Therefore, while the mother can successfully parent the three children she now has custody of, she does not possess the skills necessary to deal successfully with E.B.L. and H.B.L. *See In re Wardle,* 207 N.W.2d 554, 564 (Iowa 1973).

## VIII. *Conclusion.*

We find the parental rights of the mother as to E.B.L. and H.B.L. should be terminated. Because our conclusion is in accord with the associate juvenile judge, we vacate the decision of the court of appeals and affirm the judgment of the district court.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**