**IN THE COURT OF APPEALS OF IOWA**

No. 15-0468
Filed June 10, 2015

**IN THE INTEREST OF PS. AND Z.S.,**
**Minor Children,**

**B.S., Mother,**
**Appellant.**

_____

Appeal from the Iowa District Court for Woodbury County, Mary J. Sokolovske, Judge.


The mother appeals the juvenile court's termination of her parental rights to her children, P.S. and Z.S. **AFFIRMED.**


Ellen D. Osborn of Daniels Osborn Law Firm, P.L.C., Sioux City, for appellant mother.

Thomas J. Miller, Attorney General, Kathryn Lang, Assistant Attorney General, Patrick Jennings, County Attorney, and Dewey Sloan, Assistant County Attorney, for appellee State.

Jessica Noll, Sioux City, attorney and guardian ad litem for minor child.


Considered by Vogel, P.J., and Potterfield and Mullins, JJ.

**VOGEL, P.J.**

The mother appeals the juvenile court's termination of her parental rights to her children, P.S. and Z.S. She asserts the State failed to prove by clear and convincing evidence her rights should be terminated pursuant to Iowa Code section 232.116(1)(d) and (h) (2013), and the court should have granted her a six-month extension. She further argues the parent-child bond consideration in Iowa Code section 232.116(3)(c) should preclude termination. We conclude the mother did not preserve error with regard to her six-month-extension argument. Furthermore, due to the mother's unresolved mental health issues and her inability to adequately care for the children, the court properly terminated her rights pursuant to paragraph (h). Moreover, the parent-child bond consideration does not preclude termination. Consequently, we affirm the order of the juvenile court terminating the mother's parental rights.[1]

**I. Factual and Procedural Background**

P.S., born November 2013, first came to the attention of the Department of Human Services (DHS) shortly after his birth. His pediatrician observed he was inexplicably losing weight, and the mother failed to attend pediatric appointments. Consequently, P.S. was hospitalized due to a failure to thrive on December 10, 2013. While in the hospital, he gained 10% of his weight back. The mother expressed that she was overwhelmed and often left the care of P.S. to the hospital staff. When P.S. showed enough improvement that he could be returned home, the mother—who was living with the putative father at the time—

---

[1] The juvenile court also terminated the father's parental rights; however, he was not present at the hearing, his attorney had not had contact with him for the past six months, and he did not appeal.

refused to allow social workers to go into the home. P.S. was placed with a relative following an ex-parte removal order. Z.S., born July 2012, was voluntarily placed with a different relative in January 2014. Due to difficulties with the placements, the two children were placed together in family foster care on March 26, 2014, and remained there at the time of the termination hearing.

The children were adjudicated in need of assistance (CINA) following a combined removal and CINA hearing, held on January 17, 2014. Visitation was at the discretion of DHS. Initially the mother was offered supervised visitation, which progressed to semi-supervised, and then she began some overnight visitation with Z.S. in October 2014. However, these visits were later suspended due to the mother's inability to properly care for Z.S. and other instability concerns. As of the termination hearing, she was receiving four hours of supervised visitation each week. During the visits, DHS workers noted concerns were present on a regular basis.[2] These included the mother allowing the children to play with her medication bottles, leaving the medication within reach of the children, and her lack of ability to discipline or rectify Z.S.'s behavior, despite the fact DHS workers advised the mother of what to do. Additionally, the

---

[2] There were also issues present during DHS's interactions with the mother. In this regard, the juvenile court stated:

> [The mother], [the mother's] attorney, [Family Safety, Risk, and Permanency (FSRP)] provider, and DHS case manager met immediately following the July 21 court hearing to discuss [the mother's] request for additional visitations. The DHS case manager denied her request due to [the mother's] unstable lifestyle and noted [the mother's] current liberal visitation. [The mother] became angry, began yelling and crying, and eventually stormed out. During a visitation, [the mother] was short, argumentative, and loud with the FSRP provider and stated, "I just want to know why my kids were removed and nobody can tell me."

furnace in the mother's house was not in working order from October to the middle of December 2014.[3]

On July 25, 2014, the mother moved into the Crossroads Shelter.[4] She also obtained employment at a hotel.[5] On October 6, 2014, the mother left the shelter program and moved into a rental house. She was unable to pay the full deposit and quickly fell behind on rental payments. There was also the furnace issue, as noted above. DHS workers further expressed concerns with regard to how the mother handles money. She falls behind on bills and rental payments on a regular basis, despite being employed full time. She also does not have a driver's license or reliable transportation.

The mother suffers from several mental health problems. When she was a teenager, she was diagnosed with attention deficit hyperactivity disorder and bipolar disorder. She was given a psychological evaluation in connection with the CINA proceedings, and the same disorders were observed. She received counseling through Siouxland Mental Health and Jackson Recovery Center, which she began attending in July 2014. Though prescribed medication, she did not take it from shortly before Z.S.'s birth until January 2014. DHS noted that she again went off her medication after January, began again in July, stopped, and then started again in October 2014. At the termination hearing, the mother

---

[3] The juvenile court noted this is likely due to the fact the mother owed her landlord rent and a down payment, and therefore was afraid of contacting him to fix the furnace. However, the mother testified she called the landlord numerous times requesting he fix the furnace.

[4] Crossroads offered the mother a structured shelter program, where she could work towards living independently.

[5] As of the date of the termination hearing, the mother had been employed for six months, earning approximately $1000 each month. She was fired from her previous job at a fast food restaurant because of an incident in which she yelled at her supervisor.

testified she is currently fully compliant with her medications. Though there were concerns with substance abuse, the mother reportedly made progress in maintaining sobriety.

Due to her mental disorders the mother becomes easily enraged, which has resulted in altercations with family members and the father, and the police were called several times to intervene. Furthermore, the mother's grandmother indicated the mother frequently yelled obscenities at the children, and that she has suffered from this anger problem since she was young. DHS workers observed that she became easily angered with the children and would treat them inappropriately.

There were some concerns throughout the case that domestic violence issues existed between the mother and father. Though both denied any incidents of abuse when testifying, the mother indicated to DHS she was no longer with the father because of domestic violence issues as well as concerns he was using methamphetamine. Beginning in October 2014, the mother stated she was no longer in a relationship with him and reaffirmed this at the termination hearing. However, the following exchange occurred between the mother and the attorney for the children:

> Q: And you knew that [the father] was not following through with [the recommendations of DHS], correct?
> A: Yeah.
> Q: And you, in turn, decided to reengage in that relationship with [the father]?
> A: I didn't reengage in nothing. I ain't talked to him.
> Q: And he spent the night at your home?
> A: That's not reengaging in a relationship.

Therapists and DHS workers noted there were concerns of codependency within this relationship.

The mother received the following services during the pendency of this case: FSRP services; mental health evaluations and therapy; substance abuse evaluations and treatment; supervised visitation; family team meetings; parenting classes; dependency services; and a social history evaluation.

On August 8, 2014, the State filed a petition to terminate the mother's parental rights. A contested hearing was held on December 15, 2014, and January 7, 2015, in which the mother personally appeared and testified. On February 26, 2015, the juvenile court issued an order terminating the mother's parental rights to both children under Iowa Code section 232.116(1)(d) and (h). Specifically, it noted the mother's rights were terminated "due to her ongoing unstable lifestyle, lack of parenting skills, co-dependency/dysfunctional relationship issues, poor financial judgment, unstable housing and employment, lack of anger management skills, and ongoing mental health concerns." It also declined to grant the mother a six-month extension to work towards reunification, and concluded the parent-child bond consideration found in section 232.116(3)(c) did not preclude termination. The mother appeals.

**II. Standard of Review**

We review termination proceedings de novo. *In re S.R.*, 600 N.W.2d 63, 64 (Iowa Ct. App. 1999). The grounds for termination must be proved by clear and convincing evidence. *Id.* Our primary concern is the child's best interest. *Id.* When the juvenile court terminates parental rights on more than one statutory

ground, we only need find grounds to terminate under one of the sections cited by the juvenile court to affirm. *Id.*

To terminate parental rights under Iowa Code section 232.116(1)(h), the State must establish that: (1) the child is three years of age or younger; (2) the child has been adjudicated CINA; (3) the child has been removed from the physical custody of the parent for at least six months of the last twelve months, or for the last six consecutive months, with any trial period at home being less than thirty days; and (4) there is clear and convincing evidence the child cannot be returned to the custody of the parent as provided in section 232.102 at the present time. Iowa Code § 232.116(1)(h)(1)–(4).

## III. Six-Month Extension

As an initial matter, the mother did not preserve error with regard to her claim the juvenile court should have granted her another six months to work towards reunification. At the hearing, she testified she did not need additional time and that she was ready to care for the children. While the district court noted it was not in the best interests of the children to allow the mother additional time, the mother did not present this argument before the court, and therefore did not preserve this claim for appellate review. *See Lamasters v. State*, 821 N.W.2d 856, 863 (Iowa 2012).

## IV. Termination of Parental Rights

We agree with the juvenile court's conclusion the mother's rights should be terminated pursuant to paragraph (h). The mother has shown little to no improvement regarding her ability to care for the children. As the DHS worker testified:

Q: Okay. You mentioned some possible—possible discipline issues. Have you seen improvement in those discipline issues as far as how she interacts with the children discipline-wise?

A: I think her interactions with the children have pretty much been the same since I took over the case. She is not always willing to hear what FSRP has to say as far as suggestions. [The mother] tends to be stubborn at times with FSRP.

In determining the future actions of the parent, her past conduct is instructive. *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006). The record demonstrates the mother, despite being offered many services such as parenting classes and directions from FSRP providers, has not progressed in her ability to care for the children. Though some overnight visitation occurred with Z.S., this was stopped due to concerns the mother was not caring for Z.S. properly. These concerns included the fact the mother did not have suitable or sustainable housing, she was still unable to properly feed Z.S., she had a volatile temper, and she continued her relationship with the father. Due to these issues, the children have not been in the mother's care throughout the pendency of these proceedings, and the record demonstrates the circumstances still exist such that the children cannot be returned to the mother's care. *See* Iowa Code § 232.116(1)(d)(4).

The mother's long-standing mental health issues remain an obstacle in being able to care for the children as well. "While mental disability, standing alone, is not a sufficient reason for termination of the parent-child relationship, it can be a contributing factor to the inability to perform parental duties." *In re E.B.L.*, 501 N.W.2d 547, 551 (Iowa 1993). Unfortunately, this is applicable to the present case. The mother is unable to safely and properly parent the children due to her short temper and inability to follow the parenting instructions she

received, which, from the record, appear to stem from her mental health issues. We commend the mother for attending therapy and being at least somewhat compliant with her medication. However, this has not proved enough for her to be able to adequately and safely care for the children.

Furthermore, it is in the children's best interests the mother's rights be terminated. The mother has received numerous services, but as the juvenile court noted, the mother's rights were terminated "due to her ongoing unstable lifestyle, lack of parenting skills, co-dependency/dysfunctional relationship issues, poor financial judgment, unstable housing and employment, lack of anger management skills, and ongoing mental health concerns." These were the same concerns voiced about the mother at the beginning of these proceedings. "We have repeatedly followed the principle that the statutory time line must be followed and children should not be forced to wait for their parent to grow up." *In re N.F.*, 579 N.W.2d 338, 341 (Iowa Ct. App. 1998); *see also* Iowa Code § 232.116(2). The mother has been unable to establish herself as an adequate caretaker for the children, and, particularly given their young age, it is imperative the children gain stability. *See In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000). Consequently, the juvenile court properly concluded termination of the mother's parental rights is in the children's best interests.

**V. Parent-Child Bond Consideration**

Moreover, we do not agree with the mother's contention that the parent-child bond consideration in Iowa Code section 232.116(3)(c) should preclude termination. In this regard, the juvenile court noted:

> This court concludes that what "bond" exists is not sufficient to preserve the parent-child relationship. [P.S.] has not been in the custody of either parent since he was approximately three weeks old. [Z.S.] was one year old when she was removed from parental custody. [Z.S.] is now two years old, while [P.S.] is one year old . . . . [The mother] had regular visitations with the children and even overnight visits with [Z.S.], until such visits were restricted due to [the mother's] questionable housing decisions, ongoing contact with [the father] and explosive behaviors. [The mother] often gave into [Z.S.'s] demands and ignored parenting/safety suggestions from the FSRP provider. The court concludes that the evidence does not reflect that it would be detrimental to the children to terminate the parent-child relationships.

The record supports this assessment. Though the mother clearly loves her children, they have been out of her care since December 2013, as to P.S., and January 2014, as to Z.S. Their young age makes this particularly pertinent, given they have not had much time to establish a strong bond with the mother. Moreover, as the juvenile court noted, the children would suffer if returned to the mother's care. Consequently, the parent-child bond consideration does not preclude termination of the mother's parental rights, particularly because it is not in the children's best interests to do so. *See* Iowa Code §§ 232.116(2) & (3)(c).

For these reasons, we affirm the order of the juvenile court terminating the mother's parental rights to P.S. and Z.S.

**AFFIRMED.**