# IN THE COURT OF APPEALS OF IOWA

No. 15-1036
Filed August 19, 2015

**IN THE INTEREST OF B.B.,**
    **Minor Child,**

**J.B., Mother,**
    Appellant.
_____

Appeal from the Iowa District Court for Cerro Gordo County, Annette L. Boehlje, District Associate Judge.


A mother appeals the termination of her parental rights to her eight-year-old daughter. **AFFIRMED.**


Travis M. Armbrust of Brown, Kinsey, Funkhouser & Lander, P.L.C., Mason City, for appellant.

Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd and Janet Hoffman, Assistant Attorneys General, Carlyle D. Dalen, County Attorney, and Nichole Benes, Assistant County Attorney, for appellee.

Mark A. Young, Mason City, attorney and guardian ad litem for minor child.


Considered by Danilson, C.J., and Vogel and Tabor, JJ.

**TABOR, J.**

B.B. will turn nine years old this August. She was removed from the care of her mother, Joleen, in March 2013 because of concerns from the Department of Human Services (DHS) about Joleen's use of methamphetamine and failure to engage in treatment or participate in services. In the intervening two years, Joleen has continued to struggle with drug addiction and instability, leading to the juvenile court's termination of her parental rights to B.B.

On appeal, Joleen argues the juvenile court impermissibly based its termination order on Iowa Code section 232.116(1)(f) (2015). She also contends the juvenile court should have opted to preserve the parent-child relationship under section 232.116(3)(a) and (c) because B.B. is doing well in the custody of her father and has a strong bond with her mother. Because the juvenile court properly followed the three-step analysis for termination of parental rights and we concur with its conclusions, we affirm.

## I. Background Facts and Proceedings

Joleen has previously appealed an order terminating her parental rights to B.B. On March 25, 2015, our court reversed the juvenile court's order because the State's amendment of its petition during the termination hearing violated Joleen's due process rights. *In re B.B.*, No. 14-2087, 2015 WL 1332004, at *1 (Iowa Ct. App. Mar. 25, 2015). In our decision, we noted Joleen's admitted methamphetamine use and her sporadic attendance at drug testing and visitation. But because of the due process violation, we did not discuss the merits of the termination decision.

The day after we issued our decision, Joleen contacted DHS worker Kerry Knudsen to ask if she could resume having visits with her daughter B.B. After initially agreeing to come meet with the case workers, Joleen informed them she could not come in because she had an outstanding arrest warrant related to a probation revocation for not participating in treatment. Joleen still inquired about visitation with B.B., but the child's therapist, Brigid Christenson, opined visitation would not be in B.B.'s best interest.

On March 31, 2015, the State refiled a petition seeking to terminate Joleen's parental rights under Iowa Code sections 232.116(1)(a), (e), and (f) (2015).

On April 6, 2015, B.B. was returned to her father's care. The DHS worker reported the reunification was going well. Her father was helping B.B. with school work, taking her to activities, and was not allowing her to have unauthorized contact with Joleen. Meanwhile, Joleen was arrested on April 25 for the probation violation. She remained in jail until she entered in-patient treatment.

The district court held a termination hearing on May 29, 2015. The State called two witnesses, DHS case worker Knudsen and Pam Stemmerman from Lutheran Services of Iowa. Joleen did not testify. On June 1, 2015, the district court issued its order terminating Joleen's parental rights under Iowa Code section 232.116(1)(f). Joleen now appeals.

**II.    Standard of Review**

We review proceedings terminating parental rights de novo.  *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014).  We give weight to the juvenile court's findings of fact, especially in assessing witness credibility, but are not bound by them.  *Id.*  We will uphold an order terminating parental rights if the record contains clear and convincing evidence of grounds for termination under Iowa Code section 232.116.  *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010).  "Clear and convincing" means we have no "serious or substantial doubts as to the correctness of conclusions of law drawn from the evidence."  *Id.*

**III.    Analysis**

The decision to terminate parental rights under chapter 232 must follow a three-step analysis.  *In re P.L.,* 778 N.W.2d 33, 40 (Iowa 2010).  First, the juvenile court must determine if a ground for termination under section 232.116(1) has been established.  *Id.*  Second, if a ground is established, the court must apply the framework set out in section 232.116(2) to decide if proceeding with termination is in the child's best interests.  *Id.*  Third, if the statutory best-interests framework supports termination, the court must consider if any factors in section 232.116(3) tip the scales away from termination of parental rights.  *Id.*

We start with the statutory ground.  The juvenile court based its decision to terminate the legal relationship between Joleen and B.B. on section 232.116(1)(f).  That section states:

> The court finds that all of the following have occurred:
>    (1) The child is four years of age or older.

(2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.

(3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.

(4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

Joleen argues section (f) was not satisfied because B.B.'s biological father has custody and the statute requires the child be removed from both parents. Our supreme court has rejected this argument. *In re N.M.*, 491 N.W.2d 153, 155 (Iowa 1992).

Joleen also argues the State failed to prove B.B. could not be protected from "adjudicatory harm" if returned to her care. Joleen's petition on appeal contends an inquiry regarding the imminent likelihood of potential harm if the child is returned home is "hypothetical and hinged upon the imagination of the factfinder." Her counsel further argues "[i]t strains credulity to think that a Mother who saw her child daily is an imminent danger to her child when the daily contact has not resulted in any actual harm to the child."

We reject Joleen's argument for two reasons. First, at the termination hearing, Joleen's counsel conceded B.B. could not be returned to Joleen's care at the present time: "no one is suggesting that she's going to be going to live with Joleen." Second, our child welfare statutes are designed to prevent probable harm to a child. *In re E.B.L.*, 501 N.W.2d 547, 549 (Iowa 1993). They do not require the State to wait to take action until actual harm has occurred. *In re Dameron*, 306 N.W.2d 743, 745 (Iowa 1983).

At the time of this termination hearing, Joleen was recently released from jail. In the termination order the district court noted "Joleen has a pending probation revocation based on her continued use of methamphetamine; it appears she faces jail or prison time." The court also noted Joleen entered inpatient treatment just two days before the May 27 hearing.

To her credit, Joleen promptly asked about visitation with B.B. after we reversed the first termination order. But ultimately she avoided contact for fear she would be arrested due to her outstanding warrant. This case has been ongoing since 2013 and despite the services offered by DHS, Joleen has not made progress in addressing her addiction nor has she found stable employment or housing. Using Joleen's past performance as an indicator of her future capabilities, we believe the State proved grounds for termination by clear and convincing evidence. *See In re M.S.*, 519 N.W.2d 398, 400 (Iowa 1994).

The juvenile court also found termination was in the best interests of B.B., citing the language of section 232.116(2). The court said,

> Joleen has, in over two years of [DHS] services, failed to address her methamphetamine addition, her housing situation or found employment. She is facing additional jail time due to a probation revocation. She is not stable and cannot parent [B.B.] at this time. [B.B.] is not safe in Joleen's care, as demonstrated by Joleen's exposure of [B.B.] to criminal activity . . . and her continual lack of concern about the issues that brought the family to the attention of the [DHS].

Joleen does not appeal this finding and we agree that under these circumstances, Joleen is not the best placement to ensure B.B.'s safety or long-term nurturing and growth.

Lastly, Joleen claims termination was not necessary based on the factors in section 232.116(3)(a) and (c). These countervailing factors are permissive, not mandatory. *A.M.*, 843 N.W.2d at 113.

Under 232.116(3)(a), the juvenile court is allowed to decide against termination when a "relative has legal custody of the child." *Id.* The juvenile court acknowledged that B.B. remained in her father's custody, but noted the child has "suffered by being put in the middle of her parents." The court recalled that "Joleen manipulated [the father] for visitation and money" during the pendency of B.B.'s removal. Given these circumstances, the court concluded B.B.'s placement with her father did not overcome the need to protect the child from Joleen's "criminal and drug-addicted thinking." After our de novo review of the record, we agree with the juvenile court's conclusion.

Under 232.116(3)(c), the court may decide against termination if it finds clear and convincing evidence that severing the parent-child relationship would be detrimental to the child due to closeness of the relationship. The juvenile court acknowledged a bond between Joleen and B.B., but found the bond strained by Joleen's continued reversion to a "drug lifestyle." We agree the closeness of their relationship does not overcome the advantages of permanency and stability for B.B.

The case worker acknowledged Joleen is a good parent when clean and sober. But Joleen has not been successful in retaining the information and implementing the strategies necessary to deal with her drug addiction. In addition, she has not made progress regarding stable employment or housing.

Meanwhile, B.B.'s father has successfully completed the DHS case plan, and the case workers expected to close the CINA case this summer. B.B.'s father expressed support for terminating Joleen's rights. To achieve permanency for B.B., we agree it is best to allow the father to move forward with his parenting without the stress of the mother's fluctuating involvement. Accordingly, we conclude the juvenile court appropriately terminated Joleen's rights.

**AFFIRMED.**