**IN THE COURT OF APPEALS OF IOWA**

No. 15-1637
Filed January 13, 2016

**IN THE INTEREST OF L.C.,**
        **Minor Child,**

**K.W., Mother,**
        Appellant.

_____

Appeal from the Iowa District Court for Johnson County, Deborah Farmer

Minot, District Associate Judge.

A mother appeals from a juvenile court's permanency review order and

denial of her motion to modify the dispositional order in a child-in-need-of-

assistance proceeding.  **AFFIRMED.**

Rachel C.B. Antonuccio of Public Defender's Office, Iowa City, for

appellant.

Thomas J. Miller, Attorney General, and Bruce Kempkes, Assistant

Attorney General, for appellee.

Anthony A. Haughton of Linn County Advocate, Cedar Rapids, attorney

and guardian ad litem for minor children.

Considered by Danilson, C.J., and Mullins and McDonald, JJ.

**MULLINS, Judge.**

A mother appeals from a juvenile court's permanency review order and denial of her motion to modify the dispositional order in a child-in-need-of-assistance (CINA) proceeding. She contends the father's communications with his adolescent step-daughter constitute a material and substantial change in circumstances and that leaving the father's younger child in his care and custody is not in the child's best interests. We affirm.

## I.      Background Facts and Proceedings

L.C., born in April 2012, is the second child born to the mother and the only child of the father, N.W. The mother and father were married in May 2009 and separated in June 2011. The father did not learn of the mother's pregnancy or L.C.'s birth until late 2012 when the State filed the CINA petition. In January 2013, paternity testing confirmed N.W. is L.C.'s biological father.

The mother has a history of substance abuse, mental health issues, and domestic violence. In January 2013, the Iowa Department of Human Services (DHS) removed L.C. from the mother's care and custody due to the mother's being in jail for violating a no-contact order and L.C.'s maternal grandmother's report that the mother was giving Tylenol to L.C. "to make her sleep." At the time, the mother and L.C. had been living with the maternal grandmother, with whom the child was placed after the removal. That same month, the mother stipulated to L.C. being adjudicated CINA.[1] In February 2013, the juvenile court

---

[1] The mother stipulated to L.C.'s adjudication but disagreed with the allegation that she gave L.C. medicine to get her to fall asleep.

held a dispositional hearing placing L.C. in DHS's care and custody for continued relative placement with L.C.'s maternal grandmother.

In August 2013, based on stipulation of the parties, the juvenile court changed the permanency goal for L.C. to unification with her father, who had made substantial progress in the case and was receiving unsupervised visits with L.C. In January 2014, L.C. was placed in her father's care for a trial home placement. In March 2014, the court returned L.C. to her father's care and custody.[2] While placed in her father's care, L.C. has continued to see both of her paternal grandparents and her maternal grandmother on a regular basis.

In April 2015, the mother reported to the State, DHS, and the guardian ad litem (GAL) lengthy, ongoing electronic conversations between the father and the mother's adolescent daughter, C.S.[3] The mother claimed the conversations were of a sexual nature, that the father was attempting to lull C.S. into a sense of safety and indebtedness, and that he encouraged C.S. to use illegal drugs and alcohol. The father agreed that some of his messages to C.S. were "not appropriate." He claimed that he was trying to be a friend to her and talk to her like an adult. The mother filed a motion to modify prior dispositional orders and have L.C. removed from the father's care and custody. The mother acknowledged that she was not an option for placement for L.C. due to her

---

[2] At the time of the removal, the parties were married but not living together, and there was no pre-existing custody order.

[3] C.S. was born in November 2000. C.S. lived with N.W., her step-father, during the mother's marriage to N.W., but has not lived with him at any time during the pendency of this case. C.S. is not a subject of these CINA proceedings.

substance abuse and mental health issues but requested L.C. be placed with L.C.'s maternal grandmother.

In August 2015, the juvenile court held a hearing for permanency review and the mother's motion to modify prior dispositional orders. In its report to the court, the GAL stated, "[t]here is universal agreement that many of these text messages [between the father and C.S.] are clearly inappropriate generally and inappropriate specifically due to [their respective] ages." However, the GAL also acknowledged that L.C. "continues to do well in her father's care and there have been no health or safety concerns surrounding her placement." The State, DHS, and the GAL all recommended L.C. remain in her father's care and custody. DHS also recommended the father participate in counseling to address parenting skills and boundary issues, which the father agreed to and subsequently scheduled an appointment for counseling. Prior to the hearing, L.C.'s maternal grandmother told DHS that although "she thought the texts were highly inappropriate[,] . . . she has seen no signs that lead her to be concerned with [L.C.]'s well-being." The maternal grandmother also stated she would serve as a placement for L.C. if the court determined that placement of L.C. with her father was no longer appropriate. The mother failed to appear for the hearing.

In September 2015, the juvenile court denied the mother's motion for modification.[4] In regards to the messages between the father and C.S., the juvenile court thoroughly addressed the seriousness of the communications the

---

[4] The juvenile court also amended a previous order granting concurrent jurisdiction to provide that the Circuit Court for the State of Illinois, where the father had lived with L.C. for over one year, would have jurisdiction for dissolution and custody orders.

father had had with C.S. and determined the communications were a "material change" but that "the evidence fail[ed] to establish any direct or indirect harm to [L.C.]." It found, "[b]y all reports, [the father] has been an exemplary parent to [L.C.] in every way," and "[t]o [his] credit, he has admitted his behavior, taken responsibility, and demonstrated his willingness and ability to seek out counseling services to address this issue." The court found the father's behavior did not create an unacceptable level of risk to L.C., though there was "certainly potential for direct or indirect risk in the future." Ultimately, the court found it was not in L.C.'s best interests to remove her from her father's custody. The court ordered a higher level of supervision of the child's placement with her father, the CINA case remain open for at least one additional year, and the father to participate in counseling and education regarding appropriate interactions and boundaries with adolescent girls. The mother appeals.

## II.     Standard of Review

We review CINA proceedings de novo. *In re J.S.*, 846 N.W.2d 36, 40 (Iowa 2014). "In reviewing the proceedings, we are not bound by the juvenile court's fact findings; however, we do give them weight." *Id.* "Our primary concern is the children's best interests." *Id.* CINA determinations must be based on clear and convincing evidence. Iowa Code § 232.96(2). Evidence is clear and convincing when there is no serious or substantial doubt as to the correctness of the conclusions of law drawn from the evidence. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010).

## III.    Analysis

The juvenile court may modify a dispositional order upon good cause if the court finds any of the following circumstances exist:

> (a) The purposes of the order have been accomplished and the child is no longer in need of supervision, care, or treatment.
> (b) The purposes of the order cannot reasonably be accomplished.
> (c) The efforts made to effect the purposes of the order have been unsuccessful and other options to effect the purposes of the order are not available.
> (d) The purposes of the order have been sufficiently accomplished and the continuation of supervision, care, or treatment is unjustified or unwarranted.

Iowa Code § 232.103(4) (2011).  If the court finds there is good cause, the court must take a second step in the analysis before it may transfer custody.

A transfer of custody shall not be ordered unless the court finds there is clear and convincing evidence, "(1) the child cannot be protected from physical abuse without transfer of custody; or (2) the child cannot be protected from some harm which would justify the adjudication of the child as a child in need of assistance and an adequate placement is available."  Iowa Code § 232.102(5)(a).  Further, the court "must make a determination that continuation of the child in the child's home would be contrary to the welfare of the child, and identify the reasonable efforts that have been made."  Iowa Code § 232.102(5)(b).  Finally, in order to modify custody or placement, there must also be a material and substantial change of circumstances.  *In re R.F.*, 471 N.W.2d 821, 824 (Iowa 1991).

The mother argues the father's communications with her older daughter, C.S., constitute a material and substantial change in circumstances such that

L.C. should be removed from the father's care and custody and placed with L.C.'s maternal grandmother.

We agree with the juvenile court that the father's communications with C.S. are very disturbing. However, we also recognize, as the juvenile court did, that the record before us does not reveal any actual evidence of sexual abuse committed by the father against either C.S. or L.C. *See In re D.D.*, 653 N.W.2d 359, 362 (Iowa 2002) (adjudicating a younger brother CINA after the father committed a specific instance of physical sexual contact against an older sister and her friend); *see In re E.B.L.*, 501 N.W.2d 547, 548 (Iowa 1993) (adjudicating all siblings CINA after the father allegedly sexually abused the oldest daughter); *see In re A.B.*, 492 N.W.2d 446, 447 (Iowa Ct. App. 1992) (ordering that a CINA petition be filed for all children after reported allegations of sexual and physical abuse of one child). In this case, there has been no direct threat or allegation of harm to L.C. None of L.C.'s caregivers or caseworkers reported any concerns that would indicate abuse or neglect by the father. And the State, DHS, and L.C.'s GAL all recommended L.C. remain in her father's care and custody. For these reasons, we agree with the juvenile court that it is not in L.C.'s best interests to remove her from her father's care and custody at this time.

Therefore, upon our de novo review, we affirm the juvenile court's permanency review order and denial of the mother's motion for modification of prior dispositional orders.

**AFFIRMED.**