# IN THE COURT OF APPEALS OF IOWA

No. 19-1732
Filed February 19, 2020

**IN THE INTEREST OF N.G.,**
**Minor Child,**

**N.G., Child,**
    Appellant,

**P.G., Mother,**
    Appellant.

_____

Appeal from the Iowa District Court for Polk County, Susan Cox, District Associate Judge.

Following the termination of parental rights of the adoptive parents with respect to N.G., the adoptive mother and N.G. appeal. **AFFIRMED ON BOTH APPEALS.**

Andrea B. McGinn of The Law Shop by Skogerson McGinn LLC, Van Meter, for appellant child.

Robb D. Goedicke of Cooper, Goedicke, Reimer & Reese, PC, West Des Moines, guardian ad litem for minor child.

Sarah E. Dewein of Cunningham & Kelso, P.L.L.C., Urbandale, for appellant mother.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Considered by Tabor, P.J., and Mullins and Schumacher, JJ.

**SCHUMACHER, Judge.**

This appeal involves the second termination-of-parental-rights proceeding concerning thirteen-year-old N.G. His biological parents' parental rights were terminated in 2014. N.G. and his younger sister, S.G., were adopted in 2015 by their great-grandmother and her husband. The court terminated the adoptive parents' parental rights as to S.G. on February 26, 2019.[1] N.G.'s adoptive parents' rights were terminated in September 2019. N.G's adoptive mother and N.G. appeal from this termination.[2]

The issues raised by the adoptive mother and N.G. on appeal mirror each other. Both the adoptive mother and N.G. argue (1) the district court erred in terminating the mother's parental rights pursuant to Iowa Code section 232.116(1)(f) and (g) (2019), (2) termination is not in N.G.'s best interests, and (3) the district court erred in declining to apply a permissive exception to termination. Based on our independent review of the record, we affirm the termination.[3]

I.      **Standard of Review**

We review termination proceedings de novo. *In re S.N.*, 500 N.W.2d 32, 34 (Iowa 1993). Although we are not bound by them, we give weight to the trial court's findings of fact, especially when considering credibility of witnesses. Iowa R. App. P. 6.904(3)(g); *In re M.M.S.*, 502 N.W.2d 4, 5 (Iowa 1993). The primary interest in termination proceedings is the best interests of the child. Iowa R. App. P.

---

[1] This termination was affirmed by our court. *In re S.G.*, No. 19-0402, 2019 WL 2372915, at *4 (Iowa Ct. App. June 5, 2019).

[2] The adoptive father does not appeal the termination.

[3] The clarity of the appellate record benefits by having exhibit stickers on the electronically submitted exhibits. The exhibits contained in this record do not have exhibit stickers or other markings indicating the number of the individual exhibits.

6.904(3)(o); *In re R.K.B.*, 572 N.W.2d 600, 601 (Iowa 1998). To support the termination of parental rights, the State must establish the grounds for termination under Iowa Code section 232.116 by clear and convincing evidence. *See* Iowa Code § 232.116. "Clear and convincing evidence" means there are no serious or substantial doubts as to the correctness of conclusions of law drawn from the evidence. *See Raim v. Stancel*, 339 N.W.2d 621, 624 (Iowa Ct. App. 1983); *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000).

## II.     Facts and Prior Proceedings

N.G. and S.G. came to the attention of the Iowa Department of Human Services (DHS) in late 2017 when DHS received a report that the adoptive father and M.R., a teenage cousin living in the home, had sexually abused S.G. S.G. and N.G. had been previously adjudicated as children in need of assistance on March 15, 2013. Both children were again adjudicated to be children in need of assistance in October 2017 pursuant to Iowa Code section 232.2(6)(b), (c)(2), and (d).

The children's child-in-need-of-assistance status was confirmed at a dispositional hearing held on November 14, 2017. In order to allow N.G. and S.G. to remain in their adoptive mother's home, the adoptive father and M.R. were safety-planned out of the family home. However, due to concerns that the adoptive mother was coaching S.G. concerning the sexual abuse allegations, both N.G. and S.G. were removed by court order on December 7, 2017. The children were separated, with N.G. being placed at a shelter care facility and S.G. being placed in a foster care home. Since removal, N.G. has been in five different placements. While M.R. was initially placed outside the home, at the time of the termination

hearing in June 2019, M.R. had been returned to the care of the adoptive mother for approximately one year.[4]  A termination hearing as to N.G. was held on June 18, 2019, with the district court terminating the adoptive parents' parental rights in September 2019.

## III.    Analysis

Iowa courts analyze termination petitions in three steps.  *In re P.L.*, 778 N.W.2d 33, 40 (2000).  First, the district court must decide whether the State proved one of the grounds listed for termination in Iowa Code section 232.116(1).  After finding that proof by clear and convincing evidence, the court must consider whether termination is in the best interest of the child or children by applying the factors in section 232.116(2).  If the best-interest test is met, the court must determine if any of the permissive factors listed in section 232.116(3) stand in the way of terminating the parental rights.  *Id.*

When the juvenile court terminates rights on more than one ground, we need only find the action proper under one paragraph to affirm.  *In re J.B.L.*, 844 N.W. 703, 704 (Iowa Ct. App. 2014).  One of the grounds relied upon by the district court for termination was Iowa Code section 232.116(1)(f).  To terminate under paragraph (f), clear and convincing evidence must exist to support the following elements: (1) the child must be at least four years old; (2) they must have been adjudicated as a child in need of assistance; (3) they must have been removed from the home for at least twelve of the last eighteen months, or for the last twelve

---

[4] The adoptive mother has not adopted M.R. but has legal guardianship over this child.  M.R. was allowed to live in the family home provided the adoptive father remained out of the home and M.R. had no contact with N.G. and S.G.

consecutive months with any period at home being less than thirty days; and (4) the child cannot be returned home as provided in section 232.102 at the present time. *See In re A.M.*, 843 N.W.2d 100, 111 (Iowa 2014) (interpreting the statutory language "at the present time" to reference the time of the termination hearing).

### A. Statutory Grounds

We proceed by analyzing this appeal under Iowa Code section 232.116(1)(f). Neither the adoptive mother nor N.G. contest the first three elements. At the time of the termination hearing, N.G. was over the age of four, had been adjudicated a child in need of assistance, and had been out of the home for a period of over twelve months. Since removal, N.G. had never been placed for a trial period at home. Therefore, we are left to determine if the district court correctly found clear and convincing evidence existed to support a determination that N.G. could not be returned to the custody of the adoptive mother at the time of the termination hearing.

We agree with the district court that N.G. could not be returned to the custody of his adoptive mother at the time of the termination hearing, as the adoptive mother "cannot or will not adequately protect the children from sex offenders." Following court involvement, DHS founded a child abuse assessment against the adoptive father for sexual abuse. DHS also founded two separate child abuse assessments for sexual abuse against M.R., the teenage cousin of N.G and S.G. who was living in the family home at the time of the termination hearing.[5]

---

[5] The victim of the second founded abuse assessment for sexual abuse by M.R. was neither N.G. nor S.G.

At the time of the termination hearing, the adoptive mother remained steadfast that her husband and M.R. had not sexually abused S.G. There had been no authorized contact between M.R. and N.G. since case initiation. However, the adoptive mother planned to have M.R. and N.G. share a bedroom if N.G. was returned to her custody. After the termination of her parental rights as to S.G., the adoptive mother regularly missed therapy and cancelled interactions with N.G.

Both S.G. and N.G. were aware of the adoptive mother's ongoing contact with the adoptive father since the report of sexual abuse. His truck would be located in the driveway at scheduled visits. The adoptive mother spoke to the children of remodeling work the adoptive father was completing on the family home. While pictures of N.G. and S.G. were removed from the walls of the family home, a new photograph of the adoptive father and three young girls was displayed in the home during visits. Gifts that were presented to the children by the adoptive mother in excessive amounts were noted to be "from mom and dad." While not physically visible during the visits, the adoptive father's presence loomed in the home.

The adoptive mother also argues that N.G. could be returned to her home since there is no evidence that he was sexually abused. Such argument has been repeatedly rejected by our appellate courts. Our case law recognizes that when one child is at risk of sexual abuse by a parent, the child's siblings are also at risk, regardless of sex. In *In re D.D.,* 653 N.W.2d 359, 362 (Iowa 2002) our supreme court stated:

> [F]acts in prior cases suggest that perpetrators of sexual abuse often abuse multiple children in the family without regard to the sex of the child. *See, e.g.*, *State v. Farnum* 397 N.W.2d 744, 745 (Iowa 1986)

(defendant convicted of sexually abusing boy and girl living in home along with neighbor girl). Prior decisions likewise reflect the common sense notion that, ordinarily, all siblings are at risk when one child has been sexually abused. *See, e.g.*, *In re E.B.L.*, 501 N.W.2d 547, 548 (Iowa 1993) (father allegedly sexually abused older daughter and all six children adjudicated CINA); *In re A.B.*, 492 N.W.2d 446, 447 (Iowa Ct. App. 1992) (court ordered CINA petition filed on all children after allegations of sexual and physical abuse of one child).

We reject any contention that N.G. is at less risk because of his sex and age given the lack of progress made in the adoptive mother's acknowledgement of the abuse, the adoptive mother's continued connection to the adoptive father, and M.R.'s residence in the family home. *See In re M.W.*, No. 04-1075, 2004 WL 1900003, at *3–4 (Iowa Ct. App. Aug. 26, 2004).

**B. Best Interest of N.G.**

N.G. has a tragic history. He and his brother were involved in a house fire in which his brother lost his life. N.G. has unresolved issues concerning the death of his brother. N.G. was abused at the hands of his biological parents. His biological parents' rights were terminated. At the time of the instant termination hearing, he had been removed from his home for approximately eighteen months due to sexual abuse of his younger sister by two individuals residing in that home, including his adoptive father. His adoptive mother continued to discredit the victim, N.G.'s sister, and refused to acknowledge the abuse that occurred in her home. N.G. is now placed with his younger sister in a foster home that is willing to adopt both children. N.G. and S.G. share a close relationship. N.G. is in the seventh grade and reported to be a good student. At the time of the termination hearing, he was doing well at the foster home with his sister and had "come out of his shell." We agree that terminating the parental rights so N.G. can be permanently placed

gives primary consideration to N.G's safety, to the best placement for furthering the long-term nurturing and growth of N.G., and to the physical, mental, and emotional needs of N.G. under section 232.116(2*). P.L.,* 778 N.W.2d at 41.

**C. Permissive Exception**

"Once we have established that the termination of parental rights is in the child[ ]'s best interests, the last step of our analysis is to determine whether any exceptions in section 232.116(3) apply to preclude the termination." *M.W.*, 876 N.W.2d at 225. Section 232.116(3) provides,

> The court need not terminate the relationship between the parent and child if the court finds any of the following:
> a. A relative has legal custody of the child.
> b. The child is over ten years of age and objects to the termination.
> c. There is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship.
> d. It is necessary to place the child in a hospital, facility, or institution for care and treatment and the continuation of the parent-child relationship is not preventing a permanent family placement for the child.
> e. The absence of a parent is due to the parent's admission or commitment to any institution, hospital, or health facility or due to active service in the state or federal armed forces.

A finding of any of these factors allows the court to avoid terminating parental rights, but the factors "are permissive, not mandatory." *A.M.*, 843 N.W.2d at 113 (quoting *In re D.S.*, 806 N.W.2d 458, 474–75 (Iowa Ct. App. 2011)). "We may use our discretion, 'based on the unique circumstances of each case and the best interests of the child, whether to apply the factors in this section to save the parent-child relationship.'" *M.W.*, 876 N.W.2d at 225 (quoting *A.M.*, 843 N.W.2d at 113). "An appropriate determination to terminate a parent-child relationship is not to be countermanded by the ability and willingness of a family relative to take

the child. The child's best interests always remain the first consideration." *In re C.K.*, 558 N.W.2d at 174; *In re A.S.*, 906 N.W.2d 467, 475 (Iowa 2018).

N.G. was not present at the termination hearing and, as such, did not testify. His attorney objected to the termination on N.G.'s behalf.[6] During the course of the underlying proceedings, N.G. made statements that he missed and loved his adoptive mother. The district court considered N.G.'s objection and those statements but found that N.G. remained at risk given that his adoptive mother had been unable or unwilling to acknowledge the sexual abuse that occurred in her home. One of the abusers remained in her home. While the adoptive mother reported that she had ended the relationship with her husband, she continued to rely on him for financial support and for improvements to her home.

We are cognizant that due to N.G.'s age he meets the statutory definition under Iowa Code section 232.116(3)(b). However, the record reflects that during most of the supervised visits with the adoptive mother, N.G. retreated to his room, with very little interaction with his adoptive mother. He declined the invitation to make calls to her outside of scheduled visits. He was recently placed in the same foster home as his sister. Throughout the life of the underlying child-in-need-of-assistance case, he requested such a placement with his sister.

N.G. argues that he may be fourteen at the time of any future adoption hearing and could object to the adoption hearing. We agree that is a possibility. If he were to object, the district court will be required to weigh that objection against

---

[6] An attorney separate from his guardian ad litem represented N.G. during the termination proceedings. His guardian ad litem supported the termination of the adoptive parents' parental rights.

a best interest standard pursuant to Iowa Code section 600.7(4). We, however, do not interpret a potential objection to a future adoption to require placement back in an unsafe home. We further do not find that N.G.'s objection to the termination outweighs the current safety concerns and the opportunity to remain placed with his sibling. As such, we agree with the district court's decision in declining to apply this permissive factor given the specifics facts of this case.

## IV. Conclusion

We affirm the termination of the parental rights pursuant to Iowa Code section 232.116(1)(f). We further agree with the district court that termination is in the child's best interest and no permissive exception should be applied to preclude termination.

**AFFIRMED ON BOTH APPEALS.**