**In the Interest of J.R., A Child.**

**Appeal of D.R., Mother.**

**No. 91–47.**

Court of Appeals of Iowa.

Sept. 24, 1991.

Jerry Zimmermann of Johnston, Larson, Potterfield, Zimmermann & Nathanson, Cedar Rapids, for appellant mother.

Bonnie J. Campbell, Atty. Gen., John M. Parmeter and Judy Sheirbon, Asst. Attys. Gen., for appellee State.

Michael W. Kennedy of Barker, Cruise, Kennedy, Houghton & Foster, Iowa City, guardian ad litem for the child [appellee].

Before OXBERGER, C.J., and SCHLEGEL and HAYDEN, JJ.

OXBERGER, Chief Judge.

The child in question is a boy born in November 1987. His mother was seventeen years old and unmarried at the time of his birth. The father is not known and has never contacted the child.

At the time of the child's birth, the mother was under the jurisdiction of the juvenile court, having been adjudicated herself a child in need of assistance. For about the first eleven months of his life, the mother cared for the child. Soon after the child's birth, the two lived in a residential treatment program called the Teenage Parent Program. The mother and child left the Teenage Parent Program in August 1988 when the mother turned eighteen.

In November 1988 the mother asked the Department of Human Services to place the child in foster care because she was unable to care for him and feared she might hurt him. The DHS placed the child in foster care at that time. The child has lived in five foster homes in the past two years. He was adjudicated to be a child in need of assistance in February 1989.

From December 1988 to August 1989 the mother's whereabouts were unknown. In August 1989 she contacted her caseworker, reporting that she had been staying with friends in other states. She resumed visits with the child in September 1989. Although visitation has continued, the child has difficulty with the visits. The mother has cooperated with certain services provid-

ed by DHS. When the mother returned to Iowa, she was pregnant with her second child. The child was born in April 1990. She has cared for this baby as a single parent since his birth.

In July 1990 the State filed a petition to terminate the mother's parental rights. After a hearing, the juvenile court terminated the mother's parental rights. The juvenile court relied on Iowa Code section 232.116(1)(g), which permits termination if a child is three years of age or younger, has been in foster care for six of the last twelve months, and cannot safely be returned to the parents' home. The juvenile court also considered the child's close attachment to his foster family, as permitted by Iowa Code section 232.116(2)(b).

The mother has appealed from the termination order. She challenges the sufficiency of the evidence to establish that the child cannot safely be returned to her care. She acknowledges that the child needs a transitional period to nurture the child's love and trust again. However, except for that nurturing time, she argues she is ready and able to provide a good home for the child.

The mother also contends the juvenile court erred by relying in part on the child's attachment to the foster family under section 232.116(2)(b). She argues that attachment to a foster family is not, by itself, a ground for termination. She also argues the evidence here falls short of showing that the child would suffer permanent harm if removed from the foster family. In addition, she argues that due to the court's reliance on this factor, the termination is improperly based on a comparison of her home with the foster home.

The mother also raises other issues related to the juvenile court's reliance on attachment to the foster family. She contends the juvenile court erred by overruling her motion for appointment of an expert psychologist at State expense to testify on the issues of attachment to the foster family and the consequences of removal from the foster family. In addition, she contends the juvenile court erred by admitting testimony from social workers that removal from the foster family would be emotionally devastating to the child; she argues that the social workers were not qualified as expert witnesses, and that their testimony was prejudicial in light of the court's refusal to appoint an expert psychologist to testify on the same issue.

The mother contends the termination should be reversed because the DHS provided inadequate services to try to reunite her with the child.

Finally, the mother contends the juvenile court should have either reopened the record or granted her a new trial so she could present newly discovered evidence that the foster family had prejudiced the child against her by telling him she would hurt him.

Because of our view of this case, we consider only whether there was clear and convincing evidence justifying the termination. We reverse the trial court's ruling and reinstate Dawn's parental rights.

■ Appellate review of termination proceedings is de novo. *In re W.G.*, 349 N.W.2d 487, 491 (Iowa 1984), *cert. denied*, 469 U.S. 1222, 105 S.Ct. 1212, 84 L.Ed.2d 353 (1985). We give weight to the findings of fact of the juvenile court, especially when considering the credibility of witnesses, but we are not bound by those determinations. *Id.* 349 N.W.2d at 491–92.

■ The primary concern in termination proceedings is the best interest of the child. Iowa R.App.P. 14(f)(15); *In re Dameron*, 306 N.W.2d 743, 745 (Iowa 1981).

> We look to the child's long-range, as well as immediate, interests. We consider what the future holds for the child if returned to his or her parents. Insight for this determination can be gained from evidence of the parent's past performance, for that performance may be indicative of the quality of the future care the parent is capable of providing. Our statutory termination provisions are preventative as well as remedial. They are designed to prevent probable harm to a child.

*In re R.M.*, 431 N.W.2d 196, 199 (Iowa App.1988) (citing to *Dameron*, 306 N.W.2d

at 745); *see also In re A.C.,* 415 N.W.2d 609, 613 (Iowa 1987).

Types of harm to a child sufficient to support termination are delineated in Iowa code section 232.2(6). Proof of any one of these harms is sufficient to support termination. *In Interest of C.M.T.,* 433 N.W.2d 55, 56 (Iowa App.1988). In order to prevail in an action to terminate parental rights, the State must prove its case by clear and convincing evidence. *In the Interests of C & K,* 322 N.W.2d 76 (1982). To support the termination of a parent's right, the court must determine that the child would suffer harm if returned to the parent's care by clear and convincing evidence. See *In the Interests of Chad,* 318 N.W.2d 213, (Iowa 1982).

TERMINATION: The trial court found that the child in this case could not be returned home without suffering harm. It is not clear what harm was considered by the trial court in making its determination. In its conclusions of law, the court while reasoning the termination, cited *In the Interest of Dameron:*

> ... we necessarily consider what the future holds for the child if returned to his or her parents. Insight for this determination can be gained from evidence of the parent's past performance, for that performance may be indicative of the quality of the future care that parent is capable of providing.

*Dameron,* 306 N.W.2d at 745.

It appears the court found that upon returning this child to his mother the future treatment would "likely" mirror her past performance for his care. In contrast to this however, the trial court found that Dawn had not only the intelligence to parent, but the ability to nurture and provide for the child's physical needs. The court stated:

> The question is whether she can follow through and is committed to doing so on the long-term basis as is required of a parent.

Based upon the trial court's order, we infer the court determined Dawn would not be able to follow through with her parenting responsibilities in the future. We find

this conclusion without merit. The record is abundantly full of evidence that Dawn has made a remarkable transition from her very difficult days as a teenage mother. She was found by the court to be a good housekeeper who is able to care and provide for herself and her youngest baby. No one has questioned Dawn's commitment to parent the youngest child. The State admits there is no argument that Dawn can provide for the child's emotional needs.

Statements from the guardian ad litem for the child are revealing.

> I don't think this case is about whether Dawn is a bad parent now, because all the evidence I have heard is she is a good parent now and I applaud her and commend her on the way she's apparently been able to turn herself around since the time in 1988 ... and now she's two years older. She's more mature, and everything I hear and see is that Dawn is an excellent mother to Anthony, and if she could turn back the clock, she would be able to parent Jonathan. ... I have no doubt you would be physically able to care for him. I have no doubt you would be in fact an appropriate placement with a mother who loves him, *but he is integrated into the foster family.*

Iowa Code section 232.102(5) states in part:

> Whenever possible the court should permit the child to remain at home with the child's parent, guardian, or custodian. Custody of the child should not be transferred unless the court finds there is clear and convincing evidence that: a. The child cannot be protected from physical abuse without transfer of custody; or, b. The child cannot be protected from some harm which would justify the adjudication of the child as a child in need of assistance and an adequate placement is available.

The State argues that although the trial court did not refer to the specific harm considered in its ruling, the record supports a finding of harm under section 232.-2(6)(c)(1) and section 232.2(6)(f). Section 232.2(6) provides, insofar as relevant to the facts of this case:

"Child in need of assistance" means an unmarried child:

a. Whose parent ... has abandoned or deserted the child.

b. Whose parent ... has physically abused or neglected the child or is imminently likely to abuse or neglect the child.

c. Who has suffered or is imminently likely to suffer harmful effects as a result of either of the following:

1. Mental injury caused by acts of the child's parent ...

2. The failure of the parent to exercise a reasonable degree of care in supervising the child.

f. Who is in need of treatment to cure or alleviate serious mental illness or disorder, or emotional damage as evidenced by severe anxiety, depression, withdrawal or untoward aggressive behavior toward self or others and whose parent ... is unwilling or unable to provide such treatment.

Mental injury is defined in Section 232.2(31A) as:

a "non organic injury to a child's intellectual or psychological capacity as evidenced by observable and substantial *impairment in the child's ability to function within the child's normal range of performance and behavior, considering the child's cultural origin.*" (emphasis added).

The State argues that the child is suffering "some sort of injury to his intellectual or psychological capacity." In support of this argument the State relies upon an early psychological evaluation of the child. The evaluation, however, does not conclude nor indicate that any deficiencies in the child's learning ability are directly caused by the mother's conduct. The report did say that the child was showing some special attachment for his foster parents, which included "some separation anxiety with his foster mother," which the report indicated was "normal and healthy." It is important to note that the foster mother in this report was not the current foster parent. There was no other psychological expert testimony in this trial. We find no competent testimony which proves by clear and convincing evidence that this child has suffered or will suffer in the future any mental injury as a result of his mother's acts.

■ The State next argues that the child suffers under section 232.2(6)(f). To support its argument, the State relies upon the child's conduct at the mother's visitation and the evaluation of the foster parents of the child's "normal behavior." We find this evidence inadequate to meet a standard of clear and convincing evidence that the child suffers the type of harm contemplated in section 232.2(6)(f).

■ BONDING TO THE FOSTER PARENT: At the heart of this case is the trial court's reliance upon the bonding of this child to the foster parents to reason the necessity to terminate parental rights. The State acknowledges that the contemplated harm in this case is "one of an emotional nature" stemming from the "severed bond between Jonathon and Dawn and in Jonathon's subsequent attachment to the foster parents and integration into the foster home." The trial court stated:

Although the parent should not be put in competition with the foster family, the legislation has invited the court to consider the adjustment and integration of the child in the foster family.

Iowa Code section 232.116(2)(b) states in relevant part:

In considering whether to terminate the rights of a parent under this section, the court shall give primary consideration to the physical, mental and emotional needs of the child. Such consideration may include any of the following:

b. For a child who has been placed in foster family care by a court or has been voluntarily placed in foster family care by a parent or by another person, whether the child has become integrated into the foster family to the extent that the child's familial identity is with the foster family, and whether the family is able and willing to permanently integrate the child into the foster family. In consider-

ing integration into a foster family, the court shall review the following:

(1) The length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining that environment and continuity for the child.

(2) The reasonable preference of the child, if the court determines that the child has sufficient capacity to express a reasonable preference.

Temporary foster relationships must be designed with the knowledge they will almost certainly end in separation. *In the Interests of A.C.*, 415 N.W.2d 609, 614 (Iowa 1987). When adults can show they will be good parents to their children the State has a compelling interest in reuniting the children with those parents, *even when the children have become attached to foster parents. Id.* at 616 (emphasis added).

We consider whether the bonding of a child to its foster parents can be the determinative factor in the termination of parental rights. We find that although the legislature provided for consideration of the bonding of a child to its foster parent in the termination process, the provisions in Iowa Code section 232.116(2)(b) were not intended to be elevated to the sole determinative factor.

At any rate, in the present case, the child has lived in five foster homes. The last foster family at the time of trial had the child for less than a year. The child is three years old. We find the period of time for integration is not sufficient to support a termination of the parental rights. Further, we find the age of this child diminishes the capacity of the child to express a reasonable preference for a parent.

The trial court erred in its ruling to terminate Dawn's parental rights. We conclude that the order terminating such rights in her child must be and hereby is reversed.

REVERSED.