**In the Interest of Z.T.D., A Child,**

**R.W., Father, Appellant.**

**No. 91–392.**

Court of Appeals of Iowa.

Oct. 29, 1991.

John E. Billingsley of Walker, Knopf & Billingsley, Newton, for appellant father.

Bonnie J. Campbell, Atty. Gen., Kathrine S. Miller-Todd, John M. Parmeter and Judy Sheirbon, Asst. Attys. Gen., for appellee State.

Gilbert R. Caldwell III of Caldwell, Caldwell & Caldwell, Newton, guardian ad litem for the child (appellee).

Heard by OXBERGER, C.J., and SCHLEGEL and HAYDEN, JJ.

HAYDEN, Judge.

The child in question, Z.T.D., is a boy born in February 1989. At the time of his birth his parents were separated. The marriage has since been dissolved.

Z.T.D. was placed in foster care shortly after his birth because neither parent was able to care for him. He has remained in foster care continuously since that time and was adjudicated to be a child in need of assistance in December 1989.

The child's mother suffers from mental illness. The child's father, R.W., leads an unstable life. He is frequently unemployed and often changes residence. Social workers alleged R.W. abuses alcohol and occasionally neglects Z.T.D. during visitation. R.W. recently married a woman who has a criminal record and an unstable work history. This woman's own children have previously been removed from her home because she provided inadequate care for them.

The juvenile court terminated the parental rights of both parents in February 1991. With respect to the mother, the juvenile court relied on the ground of consent. With respect to the father, the juvenile court relied on Iowa Code section 232.-116(1)(g).

R.W. appeals the juvenile court's termination order challenging the sufficiency of the evidence to establish Z.T.D. cannot safely be returned to his care. The father also contends the juvenile court erred by admitting and considering evidence regarding his new wife and her alleged deficiencies. Finally, R.W. maintains the juvenile court erred by considering the likelihood he would need social services to help him raise

the child; he argues in considering this factor, the juvenile court was actually relying on his poverty as a ground for termination.

■ Appellate review of termination proceedings is de novo. *In re W.G.*, 349 N.W.2d 487, 491 (Iowa 1984), *cert. denied*, 469 U.S. 1222, 105 S.Ct. 1212, 84 L.Ed.2d 353 (1985). We give weight to the findings of fact of the juvenile court, especially when considering the credibility of witnesses, but we are not bound by those determinations. *Id.* at 491–92.

The primary concern in termination proceedings is the best interest of the child. Iowa R.App.P. 14(f)(15); *In re Dameron*, 306 N.W.2d 743, 745 (Iowa 1981).

We look to the child's long-range, as well as immediate, interests. We consider what the future holds for the child if returned to his or her parents. Insight for this determination can be gained from evidence of the parent's past performance, for that performance may be indicative of the quality of the future care the parent is capable of providing. Our statutory termination provisions are preventative as well as remedial. They are designed to prevent probable harm to a child.

*In re R.M.*, 431 N.W.2d 196, 199 (Iowa App.1988) (citing to *Dameron*, 306 N.W.2d at 745); *see also In re A.C.*, 415 N.W.2d 609, 613 (Iowa 1987), *cert. denied*, 485 U.S. 1008, 108 S.Ct. 1474, 99 L.Ed.2d 702 (1988).

■ In the present case, the juvenile court terminated R.W.'s parental rights pursuant to Iowa Code section 232.116(1)(g). This statute permits the juvenile court to terminate the parent-child relationship if the child is three years of age or younger, has been adjudicated a child in need of assistance, has been placed out of the parent's custody for at least six months, and there is clear and convincing evidence the child cannot be returned to the custody of the parent at the present time. Iowa Code § 232.116(1)(g) (1991). We must examine the record to determine whether there is clear and convincing evidence the child cannot be returned to the father's custody.

The most objective evidence Z.T.D. cannot be returned to his father's custody at the present time was presented by R.W.'s own therapist, Susan Gauger. She estimated the need for at least one more year of counseling and therapy and then predicted only a fifty percent chance for reunification of parent and child. The juvenile court properly concluded R.W.'s lifestyle has not stabilized as evidenced by his sudden marriage, recent move to another community, and resignation from his job without any job prospects. Ms. Gauger also testified R.W.'s new wife complicates the home situation. She is also unemployed and does not exhibit stability. Both R.W. and his wife have limited parenting skills.

As stated by the supreme court in *In re A.C.*, 415 N.W.2d 609, 613 (Iowa 1987), *cert. denied*, 485 U.S. 1008, 108 S.Ct. 1474, 99 L.Ed.2d 702 (1988):

There are a number of stern realities faced by a juvenile judge in any case of this kind. Among the most important is the relentless passage of precious time. The crucial days of childhood cannot be suspended while parents experiment with ways to face up to their own problems. Neither will childhood await the wanderings of judicial process. The child will continue to grow, either in bad or unsettled conditions or in the improved and permanent shelter which ideally, at least, follows the conclusion of a juvenile proceeding.

Z.T.D. has already spent his entire life in foster care. The evidence gives no indication R.W. will be able to care for the child as a full-time parent in the near future. "Children should not be made to suffer indefinitely in parentless limbo." *Id.* We conclude termination of R.W.'s parental rights was proper.

■ R.W. also claims the juvenile court erred by admitting and considering evidence regarding his new wife and her alleged deficiencies. The evidence showed R.W.'s wife has been unable to meet her children's basic needs which required their removal. She has a criminal history and tends to create instability in relationships.

The caseworker testified, without objection, to much of this evidence early in the termination proceeding. Generally, objections to evidence must be raised at the earliest opportunity after the alleged ground becomes apparent to preserve the issue for review. *State v. Yaw,* 398 N.W.2d 803, 805 (Iowa 1987). When counsel finally objected, the objection was based on relevancy grounds. We determine such evidence is relevant. The juvenile court has a responsibility to consider the parenting abilities and character of any person in R.W.'s home who may have a caretaker role in Z.T.D.'s life. *See, e.g., In re M.W.,* 458 N.W.2d 847, 849 (Iowa 1990).

■ Finally, in its ruling from the bench, the juvenile court stated if Z.T.D. was returned to R.W., the child would "move around ... from cheap home to cheap home ... The money for the support of the home would come from the State ... [and] the State is going to have to raise this child if it's returned to [the father]." R.W. contends the court committed error by relying on economic conditions to make its decision. If the juvenile court did, in fact, base its decision on economic factors *alone,* then it committed error. *In re R.M.* 431 N.W.2d 196, 198 (Iowa App.1988). We find, however, the juvenile court did not base its decision solely on economic factors, and neither do we. Nevertheless, we consider these statements to be unfortunate and unwarranted. This court offers its apology to R.W. and trusts judicial comments of this nature will not occur in the future.

AFFIRMED.