## IN THE COURT OF APPEALS OF IOWA

No. 16-0893
Filed August 17, 2016

**IN THE INTEREST OF P.C. AND D.C.,**
**Minor children,**

**J.S., Mother,**
　　　　Appellant.

_____

Appeal from the Iowa District Court for Clinton County, Philip J. Tabor, District Associate Judge.

A mother appeals from a juvenile court order terminating her parental rights in her children. **REVERSED AND REMANDED.**

Matthew D. Hatch of Hatch Law Firm, P.C., Bettendorf, for appellant mother.

Thomas J. Miller, Attorney General, and Kathryn K. Lang, Assistant Attorney General, for appellee State.

Neill A. Kroeger, Le Claire, for minor children.

Considered by Potterfield, P.J., and Mullins and McDonald, JJ. Tabor, J., takes no part.

**MCDONALD, Judge.**

Jessica appeals a juvenile court order terminating her parental rights in her children P.C. and D.C. pursuant to Iowa Code section 232.116(1)(d), (e), (h) (2015). She contends the State failed to establish by clear and convincing evidence the statutory grounds authorizing termination of her parental rights. She also contends termination is not in the children's best interests.

P.C. (born 2014) and D.C. (born 2012) were adjudicated children in need of assistance in November 2014. At that time, the children and their father, Samuel, resided together with Jessica. Also residing with them were Samuel's three other children, S.C., C.C., and K.C., and the mother of those three children, Danielle.[1] In its adjudicatory order, the juvenile court found "the children are living in a home where domestic violence has been alleged and there are questions as to the appropriate supervision of the children, and [S.C.] was at school with some bruising." Following a review hearing in March 2015, the family's safety plan required the father to move out of the home due to his noncompliance with services and failure to allow service providers access to the home. After another hearing in April 2015, P.C. and D.C. were removed from the home. The court found that the father, while "perhaps not sleeping at home . . . is still at the home." The court found service providers were being denied access to the home. The court found the home to be unsafe for these children.

Subsequent to removal, the juvenile court terminated Jessica's parental rights. Termination of parental rights under chapter 232 follows a three-step analysis. *See In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010). First, the court must

---

[1] Danielle subsequently gave birth to another child, G.C., in 2015.

determine if a ground for termination under section 232.116(1) has been established. *See id.* Second, if a ground for termination has been established, the court must apply the framework set forth in section 232.116(2) to determine if proceeding with termination is in the best interests of the children. *See id.* Third, if that framework supports termination, the court must consider if any statutory exceptions set out in section 232.116(3) should serve to preclude termination of parental rights.

The State has the burden to prove the allegations of the petition by clear and convincing evidence. *See* Iowa Code § 232.96. Clear and convincing evidence is more than a preponderance of the evidence and less than evidence beyond a reasonable doubt. *See In re L.G.*, 532 N.W.2d 478, 481 (Iowa Ct. App. 1995). It means that there must be no serious or substantial doubt about the correctness of a particular conclusion drawn from the evidence. *See id.* Because our review is de novo, *see In re H.S.*, 805 N.W.2d 737, 745 (Iowa 2011), we should not be passive where there is a deficient presentation of evidence. Instead, we must satisfy ourselves the State has come forth with the quantum and quality of evidence sufficient to prove the statutory ground or grounds authorizing termination of a parent's rights. The clear and convincing evidence standard is imposed to balance the parent's interest in maintaining the parent-child relationship and the State's obligation to act *parens patriae*; to terminate a parent's rights in the absence of clear and convening evidence upsets the legislatively-created balance between these competing interests.

We frequently state we exercise do novo review with deference, meaning that we "give deference to the district court's fact findings due to its opportunity to assess the credibility of witnesses." *In re D.K.*, No. 15-0185, 2015 WL 9451053, at *2 (Iowa Ct. App. Dec. 23, 2015). The rationale underlying the accepted truism is the district court is in a superior position vis-à-vis the appellate court to determine credibility due to the trial court's opportunity to observe the witness's demeanor and nonverbal behavior believed to be relevant to credibility. The problem is this oft-repeated truism is it is probably not true. *See State v. Goddard*, No. 14–1076, 2015 WL 3914327, at *2 (Iowa Ct. App. June 24, 2015) ("An ounce of intrinsic merit or demerit in the evidence, that is to say, the value of the comparison of evidence with known facts, is worth pounds of demeanour."); Richard A. Posner, *Reflections on Judging* 124 n.33 (2013) (collecting authorities). That is not to say, however, that the appellate court should not afford deference to *the decision* of the district court, even on de novo review. There are other, less questionable reasons to exercise "de novo review with deference," including: notions of judicial comity and respect; recognition of the appellate court's limited function of maintaining the uniformity of legal doctrine; recognition of the district court's more intimate knowledge of and familiarity with the parties, the lawyers, and the facts of a case; and recognition there are often undercurrents in a case—not of record and available for appellate review—the district court does and should take into account when making a decision. Regardless of the rationale offered in justification of the rule, on de novo review, the appellate court can afford the district court deference only to the extent the district court makes specific and non-conclusory findings material to the legal

issue or issues presented. That did not happen in this case. The juvenile court made written findings in support of the termination order pursuant to section 232.117(1). The findings were non-specific and conclusory in nature without clearly identifying how the facts related to the specified grounds for termination.

The State first contends termination of Jessica's parental rights was authorized by section 232.116(1)(d). That section provides termination may be ordered if (1) the child was previously adjudicated in need of assistance after finding of physical or sexual abuse or neglect or a child, "who is a member of the same family," was so adjudicated after such a finding and (2) subsequent to the adjudication, despite the offer or receipt of services by the parents, the circumstance which led to adjudication continues to exist. *See* Iowa Code § 232.116(1)(d). There is no allegation of sexual abuse here. The relevant consideration is thus whether there has been a previous finding of physical abuse or neglect.

> But 'physical abuse or neglect' and 'abuse or neglect' are terms of art in this context. Within chapter 232, 'physical abuse or neglect' and 'abuse or neglect' mean 'any nonaccidental physical injury suffered by a child as the result of the acts or omissions of the child's parent, guardian, or custodian or other person legally responsible for the child.'

*In re J.S.*, 846 N.W.2d 36, 41 (Iowa 2014) (quoting Iowa Code § 232.2(42)); *see also In re M.W.*, 876 N.W.2d 212, 220 (Iowa 2016).

On de novo review, we conclude the State has not satisfied its burden in proving this ground for termination. In February 2012, according to the State, S.C. and C.C. were adjudicated in need of assistance pursuant to Iowa Code section 232.2(6)(b). The State asserts on appeal "[t]he circumstances leading to that adjudication included domestic violence and mental health issues." The

assertions are unsupported. The meaning of "physical abuse and neglect" was clarified in *J.S.* Pursuant to the clarification, termination is not proper in the absence of a finding of nonaccidental physical injury. *See In re M.W.*, 876 N.W.2d 212, 220 (Iowa 2016) (providing that in the absence of evidence of a "nonaccidental physical injury" to a child who is the subject of a termination proceeding, or to a child who is a member of the same family, the parents' rights may not be terminated under section 232.116(1)(d)). There is no such finding of record in this case. The State has thus not proved a prior finding of abuse and neglect, within the meaning of chapter 232, as narrowed and clarified in *J.S.*, and has not proved whether the circumstances continue to exist despite the receipt of services. *See In re A.R.*, 865 N.W.2d 619, 629 (Iowa Ct. App. 2015) ("In the absence of clear and convincing evidence of a previous adjudication, and in the absence of evidence of circumstances which led to an adjudication, we have insufficient evidence upon which to evaluate what services were offered or received and for what purpose."), *overruled on other grounds by M.W.*, 876 N.W.2d at 221.

The State also contends termination of parental rights was authorized under section 232.116(1)(e). This section requires the State to prove by "clear and convincing evidence that the parents have not maintained significant and meaningful contact with the child during the previous six consecutive months." "Significant and meaningful contact"

> includes but is not limited to the affirmative assumption by the parents of the duties encompassed by the role of being a parent. This affirmative duty, in addition to financial obligations, requires continued interest in the child, a genuine effort to complete the responsibilities prescribed in the case permanency plan, a genuine effort to maintain communication with

the child, and requires that the parents establish and maintain a place of importance in the child's life.

Iowa Code § 232.116(e)(3).

Here, the evidence showed Jessica has maintained significant and meaningful contact with the children. She has weekly visits with them. *See In re G.B.*, No. 14-1516, 2014 WL 6682456, at *3 (Iowa Ct. App. Nov. 26, 2014) (concluding regular visitation supported finding of significant and meaningful contact). She has limited financial means, but she brought the children clothes, books, and other gifts on her visits with them. *See In re A.I.-A.M.*, No. 11-1120, 2011 WL 3925560, at *4 (Iowa Ct. App. Sept. 8, 2011) (concluding that providing for child supported finding of significant and meaningful contact); *see also In re Z.T.D.*, 478 N.W.2d 426, 428 (Iowa Ct. App. 1991) (holding it would be error to terminate parental rights on the basis of economic factors alone). Her case permanency plan required her to address her mental health issues, and she has regularly attended counseling to do so. *See In re T.S.*, No. 15-0892, 2015 WL 4641792, at *3 (Iowa Ct. App. Aug. 5, 2015) (concluding case plan compliance supported finding of significant and meaningful contact). She has received parenting advice from service providers and states she intends to adopt that advice if the children are placed in her care. *See In re S.W.*, No. 15-0549, 2015 WL 3635722, at *5 (Iowa Ct. App. June 10, 2015) (concluding compliance with case plan, including finding suitable housing and seeking out parenting classes, supported finding of significant and meaningful contact). She has moved into an apartment. *See id.* There is unrebutted evidence she has a bond with the children that suggests she has established and maintained a place of importance

in their lives. *See In re J.C.*, No. 14-0100, 2014 WL 1234432, at *3 (Iowa Ct. App. Mar. 26, 2014) (concluding parent-child bond supported finding of significant and meaningful contact). On de novo review, we conclude the State failed to meet its evidentiary burden.

Finally, termination under section 232.116(1)(h) requires, relevantly, "clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time." Implicit in this requirement is a determination that a child would suffer adjudicatory harm if returned to the parent's care. *See In re J.R.*, 478 N.W.2d 409, 412 (Iowa Ct. App. 1991). That showing must be made by clear and convincing evidence. *See In re D.P.*, 465 N.W.2d 313, 315 (Iowa Ct. App. 1990).

We conclude the State has failed to meet its burden. The State asserts Jessica's decision to continue a relationship with Samuel disqualifies her from having the children returned to her care. The State ignores credible evidence that Jessica has sought to improve her life over the course of this case. She has steady employment. She has a residence. She has sought mental health counseling. She has obtained parenting advice. Earlier reports suggest she lacked insight into the issues raised with this family; her testimony at the termination hearing suggests greater awareness of those issues and efforts to address them. *See In re T.C.*, No. 09-1169, 2009 WL 3775248, at *2 (Iowa Ct. App. Nov. 12, 2009) (considering parenting progress in determining child could be safely returned to mother's care). More important, there is not sufficient evidence to show Samuel poses a material risk of harm to these children. While Samuel has been elusive and difficult in dealing with service providers, that alone

cannot suffice to justify termination of Jessica's parental rights. *See In re L.L.D.-W.*, No. 08-2076, 2009 WL 607562, at *2 (Iowa Ct. App. Mar. 11, 2009). A relationship with a parent who "brings very little to the table in terms of stability and support" need not necessitate termination. *In re E.N.S.*, No. 09-1619, 2010 WL 200816, at *3 (Iowa Ct. App. Jan. 22, 2010). From our review of the record, we are persuaded these children could be safely returned to Jessica's care.

We are not blind to the challenges facing this family. Work remains to be done. We sit not in moral judgment of Jessica's decision to continue her relationship with Samuel. We hope Samuel is aware of the role—positive or negative—he may yet play in Jessica's attempt to retain care of her children and is aware of the changes that may be required of him. We do sit in legal judgment, however, reviewing the application of the facts to the law. In that regard, the State has not met its burden of proof with respect to any ground authorizing termination of Jessica's parental rights. We reverse and remand this matter for further proceedings.

**REVERSED AND REMANDED.**

Potterfield, P.J., concurs; Mullins, J., concurs specially.

**MULLINS, Judge.** (concurring specially)

I concur in the conclusion of the majority opinion in this case, but write separately to begin a discussion with a different articulation of an appellate court's role in giving deference to credibility findings. As the majority opinion hints, one of the problems with truisms is they often go untested or do not have carefully defined parameters. Our supreme court has explained:

> Our rule governing review of equity cases provides:
>
>> In equity cases, especially when considering the credibility of witnesses, the court gives weight to the fact findings of the trial court, but is not bound by them.
>
> Iowa R. App. P. [6.904(3)(g)]. There is good reason for us to pay very close attention to the trial court's assessment of the credibility of witnesses. A trial court deciding dissolution cases "is greatly helped in making a wise decision about the parties by listening to them and watching them in person." *In Re Marriage of Callahan*, 214 N.W.2d 133, 136 (Iowa 1974). In contrast, appellate courts must rely on the printed record in evaluating the evidence. We are denied the impression created by the demeanor of each and every witness as the testimony is presented. *See Lehmkuhl v. Lehmkuhl*, 259 Iowa 686, 692, 145 N.W.2d 456, 460 (1966).

*In re Marriage of Vrban*, 359 N.W.2d 420, 423 (Iowa 1984). "We are not bound by the district court's findings of fact but we do give them deference because the district court had an opportunity to view, firsthand, the demeanor of the witnesses when testifying." *In re Marriage of Brown*, 487 N.W.2d 331, 332 (Iowa 1992). Those cases fairly represent the guiding principles fashioned over time in our case law. As with most brief statements of legal principles, the above quotes fail to qualify the limits or context of the weight or deference appellate courts give or

should give to our trial courts. In application, determinations of credibility and demeanor are subject to parameters we often fail to address or articulate.[2]

In criminal and civil law cases, trial courts often instruct jurors to consider credibility as follows:

> You will decide the facts from the evidence. Consider the evidence using your observations, common sense and experience. You must try to reconcile any conflicts in the evidence; but, if you cannot, you will accept the evidence you find more believable.
> In determining the facts, you may have to decide what testimony you believe. You may believe all, part or none of any witnesses' testimony.
> There are many factors which you may consider in deciding what testimony to believe, for example:
> 1. Whether the testimony is reasonable and consistent with other evidence you believe;
> 2. The witnesses' appearance, conduct, age, intelligence, memory and knowledge of the facts; and,
> 3. The witnesses' interest in the trial, their motive, candor, bias and prejudice.

Iowa Civ. Jury Instructions 100.9. That instruction finds its roots in 100-year-old case law approving these instructions to a jury:

> You are the judges of the credibility of the witnesses and the weight to be given to each and all of them. Where there is a conflict in the evidence, you should harmonize it if you can; but if you cannot so do, you should give to each witness such credit as you deem him entitled, or none if entitled to none.

*Burger v. Omaha & C.B. St. Ry. Co.*, 117 N.W. 35, 38–39 (Iowa 1908). Jurors are also instructed: "[D]o not be influenced by any personal sympathy, bias, prejudices or emotions." Iowa Civ. Jury Instructions 100.2.

On our review of trial court opinions for cases tried to the bench, judges often quote from Jury Instruction 100.9 to highlight the factors they considered in reaching their decision in the case. Trial judges are encouraged to make

---

[2] This discussion only scratches the surface of concepts of demeanor and credibility.

credibility findings in their written rulings so that both the parties and the appellate courts can understand the reasons for the conclusions reached. There is little doubt credibility determinations can be significant and helpful when considering the reliability of evidence that is in dispute. Care must be taken, however, to distinguish between likeability of the witness and credibility: credibility and likeability do not necessarily correlate. *See id.* at 100.9. Trial courts have the opportunity to observe the demeanor; we do not have that opportunity on appeal. So, we defer to the observations of the trial court as to what the judge can see and hear that we cannot. Deference is not, however, a black and white concept. Giving "weight" to the trial court's findings implies a measured approach. An appellate court should consider the reasons given by the trial court in support of its credibility findings as it measures the weight to be given on appeal to the findings.

We recognize the difficulties and pitfalls when trial judges include written credibility findings in rulings. If the findings are too harsh, the judge may be subject to claims of impartiality or bias. *Matter of Jenkins*, 503 N.W.2d 425, 426–27 (Iowa 1993) (explaining that regarding credibility of witnesses, "[o]bjective observations explained by a trial court are helpful in the review process. Clearly, the ones here do not qualify"). If the findings are too weak, they may be of little use. Judicial credibility findings might appropriately consider the factors included in the jury instructions quoted above. Demeanor is but one of many factors to consider when deciding what testimony to believe.