# IN THE COURT OF APPEALS OF IOWA

No. 20-1560
Filed February 17, 2021

**IN THE INTEREST OF E.H.,**
**Minor Child,**

**R.H., Mother,**
    Appellant.

_____

Appeal from the Iowa District Court for Cerro Gordo County, Adam D. Sauer, District Associate Judge.

A mother appeals the termination of her parental rights.  **AFFIRMED.**

Crystal L. Ely of North Iowa Youth Law Center (until withdrawal) and Cameron M. Sprecher of Sprecher Law Office, PLC, Mason City, for appellant mother.

Thomas J. Miller, Attorney General, and Kathryn K. Lang, Assistant Attorney General, for appellee State.

Jane Wright, Forest City, attorney and guardian ad litem for minor child.

Considered by May, P.J., and Greer and Schumacher, JJ.

**MAY, Presiding Judge.**

A mother appeals from the termination of her parental rights to her child, E.H.[1]  She argues (1) the State failed to satisfy the statutory grounds authorizing termination, (2) the Iowa Department of Human Services (DHS) failed to make reasonable efforts toward reunification, and (3) she should be given additional time to work toward reunification.  We affirm.

We review termination proceedings de novo.  *In re Z.P.*, 948 N.W.2d 518, 522 (Iowa 2020).  "We will uphold an order terminating parental rights where there is clear and convincing evidence of the statutory grounds for termination.  Evidence is clear and convincing when there is no serious or substantial doubt as to the correctness of the conclusions of law drawn from the evidence."  *In re T.S.*, 868 N.W.2d 425, 431 (Iowa Ct. App. 2015) (citation omitted).

We generally use a three-step analysis to review the termination of a parent's rights.  *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018).  We must determine: (1) whether grounds for termination have been established, (2) whether termination is in the child's best interest, and (3) whether we should exercise any of the permissive exceptions to termination.  *Id.* at 472–73.  "However, if a parent does not challenge a step in our analysis, we need not address it."  *In re J.P.*, No. 19-1633, 2020 WL 110425, at *1 (Iowa Ct. App. Jan. 9, 2020).

The mother claims the State failed to satisfy the statutory grounds authorizing termination.  The juvenile court found grounds for termination under

---

[1] The father filed a notice of appeal from the termination of his parental rights.  But he failed to file a timely petition on appeal.  *See* Iowa R. App. P. 6.201(1)(b), (3).  So his appeal was dismissed.

Iowa Code section 232.116(1)(e) and (h) (2020). When, as here, the juvenile court terminates on multiple statutory grounds, we may affirm on any ground supported by the record. *See In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). We focus on section 232.116(1)(h). Section 232.116(1)(h) authorizes termination of a parent's parental rights when:

> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

The mother only challenges the fourth element, whether E.H. could be returned to her home. The fourth element is satisfied when the State establishes a child cannot be safely returned to the parent at the time of the termination hearing. *In re T.W.*, No. 20-0145, 2020 WL 1881115, at *2–3 (Iowa Ct. App. Apr. 15, 2020).

Throughout this case there have been substantial concerns about the mother's unstable housing situation, lack of income, and inability to budget appropriately. The mother contends: "[T]he only reason [she] consented to the removal [of E.H.] . . . was due to the lack of housing" and she has now "been approved for housing under Section 8 and is imminently likely to be able to provide a safe and stable home for E.H." *See Daniels v. City of Des Moines Mun. Hous. Agency*, No. 10-0196, 2010 WL 3503539, at *3–4 (Iowa Ct. App. Sept. 9, 2010) (providing an overview of "the Section 8 housing assistance program"). While the

mother testified at the termination hearing that she received her Section 8 "housing paperwork in the mail," she had yet to "fill[] it out." She still had "to go through the application process" after recently obtaining part-time employment. The mother has been trying to find housing since the beginning of this case, over a year ago. At the time of the termination hearing, the mother temporarily resided in a one-bedroom apartment with the father and another couple.[2] And the mother acknowledged that the court would not find her current housing to be appropriate for E.H.

Of course, a parent's impoverished condition should not be the sole basis of a termination decision. *See In re Z.T.D.*, 478 N.W.2d 426, 428 (Iowa Ct. App. 1991). But a parent must be able to provide their child with the basic necessities of life, such as a roof over their head and food on the table. *See In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010) (noting the court considers "the physical, mental, and emotional condition and needs of the child" when determining whether to terminate a parent's rights (quoting Iowa Code § 232.116(2))); *see also In re B.M.M.*, No. 11-0203, 2011 WL 1376882, at *2–3 (Iowa Ct. App. Apr. 13, 2011).

Here, the record raises fundamental concerns about the mother's ability to care for E.H. E.H. was born prematurely, has some delayed development, a heart murmur, breathing issues, and eczema. It is critical that E.H. not be around people who smoke. Yet, the mother only recently quit smoking and at the time of the termination hearing she lived in a one-bedroom apartment with individuals that continue to smoke.

---

[2] Housing difficulties have been exacerbated due to the mother's husband, E.H.'s father, being on the sex offender registry.

Additional barriers to reunification include the mother's limited ability to "meet the needs for [E.H.], understand[] his developmental needs," and "provide for him," as well as the mother's "emotional and mental health issues," and her difficulty in "follow[ing] through with [E.H.'s] doctor's orders, understand[ing] them, [and] reach[ing] out [to] get [E.H.] help if he were to need it." These concerns are especially troubling in light of E.H.'s extensive medical issues and the special care he requires.

All things considered, we think the record is clear that the mother was not prepared to safely care for E.H. at the time of the termination hearing. *See In re A.F.*, No. 19-1668, 2020 WL 569643, at *2 (Iowa Ct. App. Feb. 5, 2020) (finding a "history of unstable housing and employment weighs against a finding that the children could be safely returned to" the mother). We recognize, though, the State "must show reasonable efforts [toward reunification] as a part of its ultimate proof the child cannot be safely returned to the care of a parent." *In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000). And here, the mother claims DHS did not make reasonable efforts. She points to the juvenile court's finding in March 2020 that "some basic services have not been offered," specifically the parents were not provided weekly status sessions.

But after that order was entered, the mother's provider was changed and she was given a new care coordinator. *See* Iowa Code § 232.99(3). The mother was then offered additional services, including weekly status sessions. Yet the mother resisted or refused a number of the services offered to her.

While DHS must make reasonable efforts toward reunification, "the parent[] bear[s] an equal obligation to demand other, different, or additional services before

a permanency or termination hearing." *In re A.O.*, No. 11-1937, 2012 WL 300406, at *2 (Iowa Ct. App. Feb. 1, 2012). Here, the mother does not claim that weekly status sessions were never provided to her after the court's March 2020 order. And she does not state what additional services DHS should have provided her. *See id.* So this issue is not preserved for our review. *See In re A.A.G.*, 708 N.W.2d 85, 91 (Iowa Ct. App. 2005).

With the reasonable-efforts issue resolved, we focus again on the core question under section 232.116(1)(h)(4): Did the State prove by clear and convincing evidence that E.H. could not be returned to the mother at the time of the termination hearing? For reasons already discussed, we answer that question in the affirmative. So this step in our analysis is satisfied. *See Z.P.*, 948 N.W.2d at 524 (affirming termination where the parent "was not prepared to assume a parenting role at the time of trial").

Next, we address the mother's request for additional time. The juvenile court may defer termination for a period of six months if it is able to "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." Iowa Code § 232.104(2)(b). The mother does not specify what changes she will achieve in six months. Nor do we see good reason to think that, within six months, the child could be returned to the mother's care. At the time of the termination hearing, she was not fully engaged in DHS services. The mother had not progressed beyond fully supervised visits with E.H. And DHS opined that it would be a "significant amount of time" before she could even move to semi-supervised visits. We can

only speculate when, if ever, the mother would be able to care for E.H. on her own. We will not force E.H. to wait while the mother may or may not find stability. *See In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) ("We do not 'gamble with the child[]'s future' by asking them to continuously wait for a stable biological parent, particularly at such tender ages." (citation omitted)).

The juvenile court was correct in terminating the mother's parental rights.

**AFFIRMED.**